IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

AMELIA RIOS, ROBERT GREEN
AND SAYRA GREEN

    Plaintiffs,

V.

CIOX HEALTH, LLC, HEALTHPORT
TECHNOLOGIES, LLC, SCANSTAT,
L.P., NORTH SHORE AGENCY, INC.,
NIX HOSPITALS SYSTEM, LLC, AND
PARTNERS IN PRIMARY CARE, P.A.

    Defendants.

CIVIL ACTION NO. 5:18-CV-00538

JURY TRIAL DEMANDED

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE**:

    Come now, Amelia Rios, Robert Green and Sayra Green, Plaintiffs herein, by and through their attorneys, who file this their Original Complaint, and would respectfully show the Court the following:

### JURISDICTION

    1.    This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(d), which confers jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

**VENUE**

2. Venue is proper in the Western District of Texas, pursuant to 28 U.S.C. §1337, based upon the fact that Plaintiffs are citizens of the State of Texas and reside in Bexar County which is located in the Western District of Texas. The transactions and occurrences which give rise to this action occurred in Bexar County, Texas.

**PARTIES**

3. Plaintiff Amelia Rios (hereinafter referred to as "Ms. Rios") is an individual residing within the Western District of Texas. Plaintiff is a consumer as that term is defined by the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. § 392.001 *et seq*.

4. Plaintiff Sayra Green (hereinafter referred to as "Mrs. Green") is an individual residing within the Western District of Texas. Plaintiff is a consumer as that term is defined by the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. § 392.001 *et seq*.

5. Plaintiff Robert Green (hereinafter referred to as "Mr. Green") is an individual residing within the Western District of Texas. Plaintiff is a consumer as that term is defined by the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. § 392.001 *et seq*.

6. Defendant, Ciox Health, LLC d/b/a Healthport and also d/b/a Ciox Health (hereinafter referred to as "Ciox") is a limited liability company organized pursuant to the laws of Georgia with its principal place of business in Georgia.

7. Defendant, Healthport Technologies, LLC d/b/a Healthport (hereinafter referred to as "Healthport") is a limited liability company organized pursuant to the laws of Georgia with its principal place of business in Georgia.

8.     Defendant, ScanStat, L.P. /b/a ScanSTAT Technologies (hereinafter referred to as "ScanSTAT") is a limited partnership organized pursuant to the laws of Georgia with its principal place of business in Georgia.

9.     Defendant North Shore Agency, Inc. d/b/a North Shore Agency, A National Collection Agency (hereinafter referred to as "North Shore") is a corporation organized pursuant to the laws of New York with its principal place of business in New York.

10.    Defendant, Nix Hospitals System, LLC d/b/a Nix Medical Center and also d/b/a Nix Healthcare System and also d/b/a Nix Physician Care Centers - TX (hereinafter referred to as "the Nix") is a limited liability company organized pursuant to the laws of Texas with its principal place of business in Texas.

11.    Defendant, Partners in Primary Care, P.A., (hereinafter referred to as "Partners in Primary Care") is a professional association organized pursuant to the laws of Texas with its principal place of business in Texas.

## FACTS

12.    The HITECH Act, 42 U.S.C. §17935(e), limits the amounts that can be charged by a medical provider for copies of medical records that are requested by a patient. Pursuant to the HITECH Act and its implementing regulations, healthcare providers may only charge a *reasonable* fee for these records that *only* includes their actual cost of: (1) labor for providing the requested records in electronic form; (2) supplies for creating the electronic media (e.g., CD or USB drive) if the patient requests that the electronic copy be provided on portable media; (3) postage, when the patient requests that the copy, or the summary or explanation, be mailed; and (4) preparation of an explanation or summary of the records, if agreed to by the patient. See 45

CFR 164.524(c)(4). These limitations apply when the patient requests that electronic copies of medical records be sent to a designated third party. See 45 CFR 164.524(c)(3)(ii)

### A. Ms. Rios' Request for Electronic Medical Records from the Nix

13. On or about May 26, 2016, Plaintiff Amelia Rios requested that the Nix provide her with a copy of her medical records in electronic format. Ms. Rios requested that the Nix send these medical records to her attorney, in connection with Ms. Rios' claim arising out of personal injuries sustained in a car wreck that occurred on October 23, 2015.

14. On or about May 31, 2016, Defendant ScanSTAT responded to Ms. Rios' request for electronic medical records on behalf of the Nix. In connection with such response, ScanSTAT indicated that Ms. Rios would be required to pay $47.04 for the requested medical records. Ms. Rios disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act.

15. On or about June 1, 2016, ScanSTAT sent Ms. Rios the requested medical records in electronic format as requested but increased its demand for payment to $84.17. Ms. Rios again disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act.

16. On or about June 8, 2016 and again on or about June 13, 2016, the Nix sent Ms. Rios a bill seeking to charge $30 for two pages of billing records responsive to her May 26, 2016 request for electronic medical records. Ms. Rios disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act. The Nix never responded to this dispute, and never provided the requested billing records to Ms. Rios.

**B.  Ms. Rios' Request for Electronic Medical Records from Partners in Primary Care**

17.     On or about June 23, 2016, Plaintiff Amelia Rios requested that Partners in Primary Care provide her with a copy of her medical records in electronic format.  Ms. Rios requested that Partners in Primary Care send these medical records to her attorney, in connection with Ms. Rios' claim arising out of personal injuries sustained in a car wreck that occurred on October 23, 2015.

18.     On or about July 9, 2016, Defendant Healthport responded to Ms. Rios' request for electronic medical records on behalf of Partners in Primary Care.  Healthport sent Ms. Rios three pages of her Partners in Primary Care medical records to her attorney via fax, but sought to charge her $40.68 for these three pages of medical records.  Ms. Rios disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act.

19.     Ms. Rios disputed the amount claimed, because it exceeded the charges allowed under the HITECH Act.     Healthport never responded to this dispute, and instead Healthport continued to send Ms. Rios invoices by which it now sought to charge a total of $92.93 for the three pages of electronic medical records that she had requested from Primary Care Physicians.

20.     Beginning on or about November 19, 2016, on information and belief, Healthport changed its name to Ciox Health as part of a prior merger of Healthport, IOD Inc., Care Communications Inc. and ECS.  Thereafter, Ms. Rios continued to receive invoices from Ciox by which it sought to charge a total of $92.93 for the three pages of electronic medical records that she had requested from Primary Care Physicians.

21. On or about August 8, 2017, Defendant North Shore sent Ms. Rios a copy of a Healthport invoice by which it sought to charge Ms. Rios $26.57 for the electronic medical records she had requested from Primary Care Physicians. North Shore directed Ms. Rios to pay this $26.57 charge directly to North Shore and indicated that this alleged debt was past due, thus making North Shore a third-party debt collector pursuant to the Texas Finance Code. Ms. Rios immediately disputed the amount claimed, because it exceeded the charges allowed under the HITECH Act. North Shore never responded to this dispute, and instead sent Ms. Rios a "Medical Records Collection Alert" by which it now sought to charge Ms. Rios $40.68 for the electronic medical records that she had requested from Primary Care Physicians.

**C. Mrs. Green's Request for Electronic Medical Records from the Nix**

22. On or about November 18, 2016, Plaintiff Sayra Green requested that the Nix provide her with a copy of her medical records in electronic format. Mrs. Green requested that the Nix send these medical records to her attorney, in connection with Mrs. Green's claim arising out of personal injuries sustained in a car wreck that occurred on April 11, 2014.

23. On or about November 21, 2016, Defendant ScanSTAT responded to Mrs. Green's request for electronic medical records on behalf of the Nix. In connection with such response, ScanSTAT indicated that Mrs. Green would be required to pay $91.28 for the requested electronic medical records.

24. Mrs. Green disputed the amount claimed, because it exceeded the charges allowed under the HITECH Act. ScanSTAT never responded to this dispute, and instead it continued to send Mrs. Green invoices by which it sought to charge a $91.28 for the electronic medical records that she had requested from the Nix.

25. On or about January 6, 2017, ScanSTAT sent Mrs. Green an invoice for $47.50 along with Mrs. Green's initial request for electronic medical records from the Nix. This invoice for $47.50 purported to relate to medical records from the Nix d/b/a Nix Physician Care Centers – TX. Thereafter, ScanSTAT sent Mrs. Green invoices for both the initial $91.28 charge for Mrs. Green's medical records from the Nix and the subsequent $47.50 charge for Mrs. Green's medical records from the Nix, bringing the total amount charged by ScanSTAT for Mrs. Green's medical records from the Nix to $138.78.

26. On or about November 23, 2016, the Nix sent Mrs. Green an invoice seeking to charge her $30 for two pages of billing records responsive to her November 18, 2016 request for electronic medical records from the Nix. Mrs. Green paid this amount to the Nix so as to obtain the billing records she needed in order to pursue her pending claim arising out of a car wreck.

### D. Mr. Green's Request for Electronic Medical Records from the Nix

27. On or about September 1, 2017, Plaintiff Robert Green requested that the Nix provide him with a copy of his medical records in electronic format. Mr. Green requested that the Nix send these medical records to his attorney, in connection with Mr. Green's claim arising out of personal injuries sustained in a slip and fall incident that occurred on January 2, 2016.

28. On or about October 3, 2017, Defendant ScanSTAT responded to Mr. Green's request for electronic medical records on behalf of the Nix. In connection with such response, ScanSTAT provided an invoice stating that Mr. Green would be required to pay $92.30 for the requested medical records.

29. Mr. Green disputed the amount claimed, because it exceeded the charges allowed under the HITECH Act. ScanSTAT never responded to this dispute, and instead ScanSTAT

continued to send Mr. Green invoices by which it sought to charge him $92.30 for the electronic medical records that he had requested from the Nix.

## CAUSES OF ACTION

30. Plaintiffs are consumers under the Texas Debt Collection Practices Act, as their claims arise out of Defendants actions and misrepresentations regarding consumer debts.

31. Defendants are debt collectors under the Texas Debt Collection Practices Act, as they directly or indirectly engage in the action, conduct, or practice of collecting, or of soliciting for collection, consumer debts that are alleged to be due from Plaintiffs.

32. The above-described acts of Defendants constitute violations of Texas Finance Code § 392.303(a)(2), as Defendants have collected or attempted to collect a charge, fee, or expense that is not legally chargeable to Plaintiffs by charging Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations.

33. The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(8), as Defendants have misrepresented the character, extent, or amount of a consumer debt by representing that they may charge Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations.

34. The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(12), as Defendants have represented that a consumer debt may be increased by the addition of service fees or other charges when a statute does not authorize the additional fees or charges by representing that they may charge Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations.

35. The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(19), as Defendants have used false representations and deceptive means to collect a debt by representing that they may charge Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations and by repeatedly sending invoices for such inflated charges to Plaintiffs.

36. The above-described acts of Defendants also violate the Texas Deceptive Trade Practices-Consumer Protection Act pursuant to Texas Finance Code § 392.404.

37. The above-described acts of Defendants were the producing cause of and resulted in actual damages to Plaintiffs, calculated as the difference between the reasonable cost to provide electronic copies of medical records in accordance with the HITECH Act and the inflated amounts charged by Defendants as set forth above, for which damages Plaintiffs sue pursuant to Texas Finance Code § 392.403(a)(1).

38. As to Defendant North Shore, Plaintiff Amelia Rios further seeks statutory damages in the amount of $100 for each violation of Texas Finance Code § 392.202 that was committed by said Defendant due to its failure to acknowledge or act on Ms. Rios' written disputes of the alleged debts in question, pursuant to Texas Finance Code § 392.403(e).

39. Plaintiffs seek injunctive relief to prevent or restrain the above-referenced violations of the Texas Finance Code, pursuant to Texas Finance Code § 392.403(a)(1).

40. Plaintiffs seek reasonable and necessary attorney fees and costs for trial and appeal of this cause as provided by Texas Finance Code § 392.403(b).

41. Defendants' actions were committed intentionally and knowingly, thereby making Defendants liable to Plaintiffs for additional damages pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act.

42. Alternatively, Defendants would be unjustly enriched if they were entitled to obtain a benefit from Plaintiffs via their actions in overcharging Plaintiffs for medical records as described above.  Plaintiffs seek an order of the Court cancelling any portion of the alleged debts at issue that exceed the reasonable cost for Defendants to provide electronic copies of medical records in accordance with the HITECH Act and restitution of the difference between such allowable charges and the inflated amounts charged by Defendants and paid as set forth above.

43. Defendants are responsible for the above-described acts and misrepresentations of their agents and employees pursuant to the doctrines of respondent superior and agency.

## CLASS ACTION ALLEGATIONS

44. This action is brought by Plaintiffs on behalf of a class consisting of (i) all persons (ii) who requested medical records from any Defendant and/or had their request for medical records acted on by any Defendant (iii) and were charged or attempted to be charged a fee for such medical records that exceeds the costs allowed to be charged pursuant to 45 CFR 164.524(c)(4).

45. Additionally, this action is brought by Plaintiff Amelia Rios on behalf of a class consisting of (i) all persons (ii) who disputed the amounts sought to be charged by Defendant North Shore (iv) whose complaint was not acknowledged by such Defendant as required by Texas Finance Code § 392.202.

46. The class is so numerous that joinder of all members is impractical. Upon information and belief, and based on reported cases, Plaintiffs allege Defendants have unlawfully charged or attempted to charge thousands of persons a fee for medical records that exceeds the costs allowed to be charged pursuant to CFR 164.524(c)(4). Furthermore, upon information and belief, Plaintiff Amelia Rios alleges that Defendant North Shore Agency has failed to acknowledge written disputes concerning charges for medical records lodged by hundreds if not thousands of persons.

47. There are questions of law and fact, common to the class, which predominate over any questions affecting only individual class members. The principle question is whether Defendants' charges for medical records exceed the reasonable costs allowed to be charged pursuant to 45 CFR 164.524(c)(4).

48. A secondary common question is whether Defendant North Shore Agency violated Texas Finance Code § 392.202 by failing to acknowledge written disputes concerning their charges for medical records as required by Texas Finance Code § 392.202.

49. Individual questions as to damages and the identity of class members can be determined by ministerial inspection of Defendants' records.

50. The Plaintiffs will fairly and adequately protect the interest of the class and are committed to vigorously litigating this matter. Plaintiffs have retained counsel experienced in handling class actions and consumer claims. Neither the Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

51. Plaintiff's claims are typical of the claims of the class, which all arise from the same operative facts and are based on the same legal theories.

52. A class action is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. At least one class has been previously certified in a similar case. See, e.g. *Ruzhinskaya v. Healthport Technologies, LLC*, No. 14 Civ. 2921 (PAE) (S.D. N.Y. 2015).

## GROUNDS FOR RELIEF

53. Plaintiffs hereby re-allege and incorporate herein by this reference the allegations set forth in Paragraphs No. 1 through 51 of this Complaint.

54. Plaintiffs and the and the class described in ¶ 44 above would show that Defendants have violated the Texas Finance Code and have been unjustly enriched by charging or attempting to charge fees for medical records which exceed the amounts allowed under the federal HITECH Act and its implementing regulations.

55. Plaintiffs and the class described in ¶ 44 above are entitled to actual damages calculated as the difference between Defendants' actual cost to provide electronic copies of medical records in accordance with the HITECH Act and the inflated amounts charged by Defendants as set forth above, which damages are recoverable by Plaintiffs and the class pursuant to the above-cited provisions of Texas Finance Code, plus additional damages pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act as Defendants' conduct was committed intentionally and knowingly, plus reasonable and necessary attorney fees and costs for trial and appeal of this cause as provided by Texas Finance Code § 392.403(b). Such actual damages are also recoverable under the doctrine of unjust enrichment.

56. Plaintiff Amelia Rios and the class described in ¶ 45 above are entitled to statutory damages from Defendant North Shore in the amount of $100 per violation due to said

Defendant's failure to acknowledge disputes relating to amounts sought to be charged by Defendant North Shore as required by Texas Finance Code § 392.202, pursuant to Texas Finance Code § 392.403(e).

57. Alternatively, Defendants have exhibited common behavior towards Plaintiffs and the class by seeking to charge fees for medical records which exceed the amounts allowed under the federal HITECH Act and its implementing regulations.  Plaintiffs and the class members must have been harmed in essentially the same way, in that they have all been charged excessive amounts for electronic copies of medical records.  The granting of injunctive relief would predominate over monetary damage claims, as injunctive relief would benefit Plaintiffs and the class for many years into the future rather than being limited to relatively small damage claims for the two years prior to the filing of this lawsuit.  The injunctive relief sought is authorized by Texas Finance Code § 392.403(a)(1) and may be narrowly tailored to ensure that only the specific costs permitted by the HITECH Act and its implementing regulations are charged to persons seeking copies of medical records from Defendants.

## **JURY DEMAND**

58. Plaintiffs hereby request, for themselves and members of the class, a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to answer and appear herein and that upon final hearing and trial on the merits hereof, Plaintiffs have and recover judgment against the Defendants for the following:

    a.    Certification of this action as a class action;

    b.    Actual damages;

    c.    Statutory damages;

d. Additional damages;

e. Additionally, and/or in the alternative, injunctive relief;

f. Costs as provided for by statute or Court rule;

g. Reasonable attorneys' fees incurred through trial and any appeal taken therefrom;

h. Interest at the lawful rate until paid;

i. Such other and further relief to which Plaintiffs may be justly entitled, including awarding Plaintiffs their actual, additional and/or statutory damages and attorneys' fees in the event the case is not certified to use the class action procedure.

Respectfully submitted,

RILEY & RILEY
ATTORNEYS AT LAW

By: /s/ *Charles Riley*
CHARLES RILEY
State Bar No. 24039138
DARBY RILEY
State Bar No. 16924400
320 Lexington Avenue
San Antonio, Texas 78215
Telephone: (210) 225-7236
Facsimile: (210) 227-7907
charlesriley@rileylawfirm.com
*Attorney for Plaintiffs*