# Exhibit C

73 F.Supp.3d 259
United States District Court,
S.D. New York.

Charles SPIRO; Ann Marie Spiro; Ismael Torres, as Administrator of the Estate of Kerryann Torres, Deceased; and Tatyana Ruzhinskaya, as Administratrix of the Estate of Marina Rochniak, Deceased, individually and on behalf of others similarly situated, Plaintiffs,
v.
HEALTHPORT TECHNOLOGIES, LLC; Montefiore Medical Center; Mount Sinai Hospital; and Beth Israel Medical Center, Defendants.

No. 14 Civ. 2921(PAE).
|
Signed Aug. 29, 2014.

**Synopsis**
**Background:** Clients of firm prosecuting personal injury causes of action, in connection with which requests were made for medical records for which hospitals and their billing agent charged at allegedly inflated rates, brought cause of action against hospitals and billing agent to recover on unjust enrichment theory and for their alleged violation of deceptive trade practices statute and provision of the New York Public Health Law. Defendants moved to dismiss.

**Holdings:** The District Court, Paul A. Engelmayer, J., held that:

[1] complaint did not sufficiently plead any cognizable injury-in-fact to firm's clients, as required to establish clients' standing to pursue these claims;

[2] provision of New York Public Health Law limiting amount which hospitals could charge for photocopies of medical records by imposing cap of $0.75 per page did not modify other language in provision indicating that photocopying charges could not exceed the "costs incurred" by health care provider;

[3] complaint stated plausible claim against hospitals, and against hospitals' agent, for their alleged deceptive trade practices;

[4] complaint stated plausible claim for unjust enrichment, but only against agent; and

[5] causes of action accrued when billing agent accepted payment at allegedly inflated rate of $0.75 per page.

Motion granted; complaint dismissed.

**Attorneys and Law Firms**

**\*263** Edward Seth Goodman, Steven Lester Hess, Simonson Hess Leibowitz & Goodman, P.C., Rebecca M. Katz, Motley Rice LLC, New York, NY, Mathew P. Jasinski, William H. Narwold, Motley Rice LLC, Hartford, CT, for Plaintiffs.

Rebecca Anne Brazzano, Thompson Hine LLP, New York, NY, Seth A. Litman, Thompson Hine LLP, Atlanta, GA, for Defendants.

*OPINION & ORDER*

PAUL A. ENGELMAYER, District Judge:

This case is a putative class action lawsuit filed on behalf of all persons in New York who requested copies of their medical records from Healthport Technologies, LLC ("Healthport"), Montefiore Medical Center ("Montefiore"), Mount Sinai Hospital **\*264** ("Mount Sinai"), and Beth Israel Medical Center ("Beth Israel") (collectively, "defendants"). Plaintiffs allege that defendants overcharged for such copies. Plaintiffs bring three claims for money damages: under New York Public Health Law § 18, which sets a ceiling on such fees; under New York General Business Law § 349, which prohibits deceptive trade practices; and for unjust enrichment. In a fourth claim, plaintiffs seek injunctive relief.

On April 25, 2014, Healthport removed this case from the Supreme Court of the State of New York, New York County, on the grounds that this Court had original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ( "CAFA"). Defendants then moved, in separate motions, to dismiss the First Amended

Complaint (Dkt. 19) ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that: (1) plaintiffs lack standing; (2) the FAC fails to state a claim upon which relief may be granted; and (3) certain claims are barred by the statute of limitations.

For the reasons that follow, the Court dismisses the FAC in its entirety. The dismissal is with prejudice, with one exception: Plaintiffs are granted leave to file a Second Amended Complaint, but this leave is limited to the claims for money damages brought by plaintiff Tatyana Ruzhinskaya ("Ruzhinskaya"), as administratrix of the estate of Marina Rochniak ("Rochniak"), against defendants Healthport and Beth Israel.

### I. Background

#### A. Facts[1]

The named plaintiffs in this action are: Charles Spiro and Ann Marie Spiro ("Spiro"); Ismael Torres, as administrator of the estate of Kerry–Ann Torres ("Torres"); and Ruzhinskaya, as administratrix of Rochniak's estate. *See* FAC. The named plaintiffs purport to represent a class of similarly situated individuals, defined as:

> All persons including patients, their legal representatives and qualified persons within the scope and meaning of Public Health Law ¶ 18, who requested copies of medical records from the defendants herein and/or any other physician, hospital, or health care provider as defined in said statute ... in the State of New York, and were billed for said copies a charge in excess of the actual cost incurred by defendants for copying said records including, but not limited to, fees at, about or in excess of the **\*265** statutory maximum or "ceiling" rate of seventy-five cents ($0.75) per page, and who sustained damages as a result of said overcharging for medical records by defendants, its agents or representatives.

*Id.* ¶ 67.

Defendants Mount Sinai, Montefiore, and Beth Israel are hospitals; each qualifies as a "healthcare provider" or "provider" under New York Public Health Law § 18. *Id.* ¶ 6. Healthport is not a healthcare provider. *Id.* However, the FAC alleges that Healthport acted as the agent of the three hospitals "for the purpose of copying, furnishing and billing for medical records in response to requests made ... by [their] patients and qualified persons acting on their behalf[.]" *Id.* ¶ 78 (emphasis added); *see also id.* ¶¶ 91, 103. It alleges, in essence, that the three hospitals outsourced their copying of medical records to Healthport.

The named plaintiffs here[2] were each previously represented by the law firm of Simonson Hess Leibowitz & Goodman, P.C. ("Simonson") in connection with personal injury lawsuits brought in New York State court.[3] In the course of each of those representations, Simonson requested and received, on behalf of its client, copies of that client's medical records from one of the hospital defendants named in this lawsuit. *See id.* ¶¶ 75–115; *see also* Brazzano Decl. Ex. A. It is those requests that form the basis of each plaintiff's claim to have been overcharged for such copies. Specifically, the FAC alleges that:

- As to Charles Spiro, Simonson requested medical records from Mount Sinai. FAC ¶ 76. On January 9, 2011, Mount Sinai, "by and through its agent Healthport, responded to [the] request ... and forwarded a bill in the amount of $74.00 for copying 96 pages of medical records." *Id.* ¶ 83. The bill "represented $72.00 for the actual copying costs ($.75 per page)," and "$2.00 for 'QuickView Delivery.' " *Id.*

  - As to Kerry Ann Torres, Simonson requested medical records from Montefiore. *Id.* ¶ 89. On February 3, 2010, Montefiore, "by and through its agent Healthport, responded to [the] request ... and forwarded a bill in the amount of $28.25 for copying 35 pages of medical records." *Id.* ¶ 96. The bill "represented $26.25 for the actual copying costs ($.75 per page)," and "$2.00 for 'QuickView Delivery.' " *Id.*

  - As to Marina Rochniak, Simonson requested medical records from Beth Israel. *Id.* ¶ 102. On July 6, 2013, Beth Israel, "by and through its agent Healthport, responded to [the] request ...

and forwarded a bill in the amount of $140.75 for copying 185 pages of medical records." *Id.* ¶ 109. The bill "represented $138.75 for the actual copying costs ($.75 per page)," and "$2.00 for 'Electronic Delivery Fee.'" *Id.*

As noted, the Simonson firm made these requests for medical records while representing plaintiffs in personal injury lawsuits. *See id.* ¶¶ 87, 101, 113. Simonson paid the bills for copying each client's medical records: For Spiro, it paid the $74.00 bill on January 28, 2011, *id.* ¶ 84; for Torres, it paid the $28.25 bill on February 25, 2010, *id.* ¶ 97; and for Rochniak, it paid **\*266** the $140.75 bill on July 8, 2013, *id.* ¶ 110. *See also* Brazzano Decl. Ex. A. These lawsuits, in turn, settled on February 29, 2012 (Spiro), September 13, 2012 (Torres), and July 12, 2013 (Rochniak). Following each settlement, each plaintiff reimbursed Simonson for his or her "share of the case disbursements ... associated with the case," including the cost of copying medical records. FAC ¶¶ 88, 101, 114. Spiro did so on April 12, 2012, *id.* ¶ 88; Torres, on January 22, 2013, *id.* ¶ 101; and Rochniak, on October 4, 2013, *id.* ¶ 114.

Based on these facts, each plaintiffs alleges that he or she suffered damages from "being caused to pay fees for the medical records in excess of the legally permissible rate," *id.* ¶ 115, which, plaintiffs claim, was limited to the actual costs of photocopying.

### B. Procedural History

On March 12, 2014, plaintiffs filed the original Complaint in this case in the Supreme Court of New York in Manhattan. Dkt. 2. On April 25, 2014, Healthport removed the case to this Court, *see id.*; on May 2, 2014, it moved to dismiss the Complaint, *see* Dkt. 5.

On May 27, 2014, plaintiffs filed the FAC. Dkt. 19. It brings claims (1) under N.Y. Public Health Law § 18 ("Count One"); (2) under N.Y. General Business Law § 349 ("Count Two"); (3) for unjust enrichment ("Count Three"); and (4) for injunctive relief ("Count Four"), in each case based on a claim that plaintiffs were overcharged for copies of their medical records.

On June 10, 2014, Healthport submitted a renewed motion to dismiss, Dkt. 25, and an accompanying memorandum of law, Dkt. 26 ("Healthport Br."). The same day, Mount Sinai and Beth Israel (collectively, "the hospital defendants") submitted a memorandum of law in support of their motion to dismiss, Dkt. 22 ("Hospital Br."), as did Montefiore, *see* Dkt. 29 ("Montefiore Br."). On June 24, 2014, plaintiffs submitted a brief in opposition to all three motions to dismiss. Dkt. 33 ("Pl. Br."). On July 1, 2014, defendants submitted their reply briefs. *See* Dkt. 35 ("Hospital Reply Br."), 36 ("Healthport Reply Br."), 37 ("Montefiore Reply Br.").

Defendants move to dismiss the FAC on three grounds. First, defendants seek dismissal under Rule 12(b)(1), on the ground that plaintiffs lack standing to bring this suit. Second, defendants seek dismissal under Rule 12(b)(6) for failure to state a claim. Third, Mount Sinai and Healthport assert that plaintiff Spiro's claims should all be dismissed as time-barred. The Court addresses each argument in turn.

## II. Discussion

### A. Lack of Standing

#### 1. Applicable Legal Principles

Because it is jurisdictional, the Court first considers defendants' argument that plaintiffs lack standing. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citation omitted); *Wong v. CKX, Inc.,* 890 F.Supp.2d 411, 414 (S.D.N.Y.2012) ("[T]he Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action.") (citation omitted).

"[A] claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008) (quoting *Makarova v.* **\*267** *United States,* 201 F.3d 110, 113 (2d Cir.2000)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 62 (2d Cir.2012) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir.2005)); *see also Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 404 (2d Cir.2011) ("Generally,

'[s]tanding is a federal jurisdictional question determining the power of the court to entertain the suit.' ") (quoting *Carver v. City of New York,* 621 F.3d 221, 225 (2d Cir.2010)). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Mahon,* 683 F.3d at 62 (citation omitted).

**[1]**  "Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 106–07 (2d Cir.2008) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (emphasis in the original); *accord Cacchillo,* 638 F.3d at 404 (requiring the "three familiar elements of standing: injury in fact, causation, and redressability") (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)).

**[2]** **[3]**  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton,* 452 Fed.Appx. 24, 27 (2d Cir.2011) (citing *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir.2006), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). *See also APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003); *Amidax Trading Group v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir.2011). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova,* 201 F.3d at 113.

Here, the defendants argue that plaintiffs lack standing to bring any claim in the FAC. When standing is put at issue, "[e]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Carver,* 621 F.3d at 225 (alterations in original) (citing *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130). "Because standing is challenged [here] on the basis of the pleadings, we [therefore] accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 225 (alterations in original) (quoting *W.R. Huff,* 549 F.3d at 106).

### 2. Analysis

**[4]**  Defendants argue that plaintiffs have failed to plead a cognizable injury-in-fact, because it was the Simonson firm, not plaintiffs, which was charged, and which paid, for the copies of the medical records at issue. Specifically, as defendants note, the FAC alleges that Simonson, as plaintiffs' counsel in the personal injury actions, requested the copies of medical records, *see* FAC ¶¶ 76, 89, 102; Brazzano Decl. Ex. A, and paid the bills for those copies, ***268** *see* FAC ¶¶ 84, 87, 110; Brazzano Decl., Exs. B, C. On this basis, defendants contend, assuming there was an overcharge for the copying fees, only Simonson suffered an injury-in-fact.

In response, plaintiffs note that the FAC also alleges that each plaintiff later reimbursed the Simonson firm for the cost of the copies, after the personal injury lawsuit in question settled. Specifically, plaintiffs note the FAC's allegation that, at the time of settlement, each plaintiff paid his or her "share of the ... disbursements ... associated with the case including, the copy charges paid to defendants herein." [4] FAC ¶¶ 88, 101, 114. Because the copying cost was passed along to Simonson's client, plaintiffs argue that they each suffered an out-of-pocket monetary loss, and it is irrelevant that Simonson fronted the payments for them.

On the facts pled in the FAC, defendants are correct. The FAC does not plead that any plaintiff was obligated to reimburse Simonson for the copying costs he incurred. Instead, on the facts as pled, the decision by plaintiffs to reimburse Simonson, after the fact, for the copying costs he had paid was a volitional act—an act of grace. As pled, plaintiffs never dealt directly with Healthport. Nor, based on the FAC, had they any obligation to reimburse Simonson for his outlay at the time he ordered the photocopies. On these facts, any legal right to challenge defendants' ostensible overcharging would belong exclusively to Simonson, as it was Simonson,

and Simonson alone, who suffered an injury *caused* by defendants' overcharging. Plaintiffs' later decision to reimburse their lawyer, and Simonson's decision to accept such reimbursement, must be taken as independent, volitional, discretionary acts, breaking the chain of causation necessary to establish Article III standing. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and *not the result of the independent action of some third party* not before the court.") (internal quotation marks and alterations omitted) (emphasis added).

Indeed, plaintiffs' theory that a discretionary decision after-the-fact to reimburse another party for a charge confers standing on the reimbursing entity would vastly broaden Article III standing. Imagine, for example, a person who took a taxi home one night, and was overcharged for the taxi ride in violation of local law. If the person was later voluntarily reimbursed for that cost—by a friend, parent, employer, stranger, or Good Samaritan —that reimbursing entity would then, on plaintiff's theory, have the legal right to sue the cab driver for overcharging. There is no authority for this claim. Absent assignment of a legal right to sue for such relief, which is not alleged here,[5] the mere act of making **\*269** a third-party whole for an expense incurred and already paid does not entitle the paying party to the right to challenge that expense.

To be sure, the analysis would be different if plaintiffs had been obligated at the time that Simonson incurred the copying expenses to reimburse Simonson for the expenses he incurred in connection with representing them. In that circumstance, whether plaintiffs' reimbursement duty was absolute or conditioned on a settlement or verdict in their favor, *then* Healthport's charge to Simonson for copying and Simonson's payment of that charge would have given rise to a liability (or a contingent liability) on plaintiffs' part. That liability, to repay Simonson for the copying expenses, would have given plaintiffs standing to challenge the copying cost as excessive, because plaintiffs would then have suffered an injury-in-fact (a legal duty to pay these excessive costs) traceable to the defendants responsible for the charges. *See Roman Catholic Archdiocese of N.Y. v. Sebelius,* 907 F.Supp.2d 310, 329 (E.D.N.Y.2012) ("[N]umerous cases have also recognized that uncertain future harms can have present effects that are sufficient for standing purposes.") (collecting cases); *see also Clinton v. City of N. Y.,* 524 U.S. 417, 431, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (New York had standing to challenge the line item veto, even though a pending administrative action could waive the contingent liability, because "[t]he revival of a substantial contingent liability immediately and directly affects the borrowing power, financial strength, and fiscal planning of the potential obligor"); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 498 (7th Cir.2005) (plaintiff had standing to bring suit because "the present impact of a future, though uncertain, harm may establish injury for standing purposes"). The FAC, however, does not allege that there was any such agreement in place between plaintiffs and Simonson at the time Simonson incurred the copying expense under which plaintiffs would reimburse Simonson for the costs it incurred in the course of representing plaintiffs in their lawsuits. The FAC is silent on that point.[6]

This pleading deficiency should be easily corrected, if the facts so permit. In New York State, an attorney is required to "provide to the client a written letter of engagement before commencing the representation, or within a reasonable time thereafter[.]" *See* N.Y. Comp.Codes R. & Regs. tit. 22, § 1215.1. The engagement letter must explain (1) the scope of the legal services to be provided; and (2) the "attorney's fees to be charged, expenses and billing practices." *Id.* It follows that, if plaintiffs were obligated to reimburse Simonson for expense outlays, including in obtaining plaintiffs' medical records, then **\*270** Simonson's engagement letter with each plaintiff should reflect such a term.

Each of Counts One, Two, and Three turns on the claim that defendants overcharged Simonson for copies of plaintiffs' medical records. Because the FAC does not assert facts on which plaintiffs have standing to pursue such a claim, the Court dismisses these three damages claims for lack of subject matter jurisdiction.

However, the Court's judgment is that, to the extent a particular plaintiff's claims are not independently defective, it is appropriate to give that plaintiff the limited right to amend the FAC, solely to add facts relating to the terms of the engagement between the plaintiff and the Simonson firm, if those terms reflect that the plaintiff had a duty at the time Simonson incurred the copying expenses to reimburse Simonson for them. Specifically, the Court

anticipates that an amended complaint would recite the date and specific relevant terms of the engagement between the plaintiff and the Simonson firm and attach the engagement letter between the plaintiff and the firm. For the reasons set out later in this opinion, however, the Court holds that (1) all claims by plaintiffs Spiro and Torres are independently defective because they are barred by the statute of limitations; and (2) the claim in Count Three of unjust enrichment against the hospital defendants is independently defective because the FAC does not allege that these defendants benefitted from the alleged overcharging. Accordingly, the Court extends the opportunity for limited repleading only to plaintiff Rochniak, because only her claims are not time-barred. Rochniak may replead Counts One and Two against Healthport and Beth Israel, and Count Three against Healthport.[7]

**[5] [6] [7] [8]** A separate standing issue is presented by defendants' motion to dismiss Count Four, which seeks injunctive relief. *See Mahon,* 683 F.3d at 62 (plaintiffs must "demonstrate standing for each claim and form of relief sought"). To have standing to pursue such relief, "the moving party must demonstrate that a defendant's conduct is causing irreparable harm." *Schroedel v. N.Y. Univ. Med. Ctr.,* 885 F.Supp. 594, 598 (S.D.N.Y.1995) (citing *Levin v. Harleston,* 966 F.2d 85, 90 (2d Cir.1992)). The requirement of irreparable harm " 'cannot be met where there is no showing of any real or immediate threat *271 that the plaintiff will be wronged again.' " *Levin,* 966 F.2d at 90 (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Real and imminent, not remote, irreparable harm is what must be demonstrated." *Carey v. Klutznick,* 637 F.2d 834, 837 (2d Cir.1980) (per curiam). Although a past wrong is relevant evidence as to whether there is a real and immediate threat of repeated injury, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

**[9]** Here, even assuming that plaintiffs had adequately pled that they suffered a past injury redressable via a damages remedy, they have failed to plead facts that would permit the plausible inference that they are in danger of being "wronged again." The FAC does not, for example, allege that any plaintiff anticipates requesting additional medical records from defendants. Nor does the FAC allege that plaintiffs even remain patients of the defendants, such that they might be apt to request copies of future medical records. That plaintiffs purport to represent a class of similarly situated individuals—some of whom conceivably may one day request medical records from defendants—does not fill this void. "[T]he named plaintiffs in [a class] action must themselves have standing to seek injunctive relief." *Dodge v. Cnty. of Orange,* 103 Fed.Appx. 688, 690 (2d Cir.2004); *see also Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted); *Cent. States Se. & Sw. Areas Health & Welfare Fund,* 433 F.3d at 199 ("The Supreme Court has held that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.") (citing *O'Shea,* 414 U.S. at 494, 94 S.Ct. 669) (internal quotation marks omitted).

The FAC thus fails to plead a plausible claim that the named plaintiffs face a "real or immediate threat" of being "wronged again." Plaintiffs therefore lack standing to pursue their claim for injunction relief. Accordingly, Count Four is also dismissed, with prejudice, for lack of subject matter jurisdiction.[8]

For the foregoing reasons, all claims in the FAC are dismissed for lack of standing. In the interest of efficiency, however, and specifically to explain why it is granting only plaintiff Rochniak leave to amend to attempt to cure the deficient standing allegations, the Court addresses defendants' two other motions to dismiss. These argue that the FAC fails to state a claim and that certain claims are time-barred.

*272 **B. Failure to State a Claim**

**1. Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, " 'state

a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted). A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S at 555, 127 S.Ct. 1955. The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999).

### 2. Analysis

#### a. Count One

**[10]** Count One alleges that defendants violated Section 18 of the New York Public Health Law, which states:

> The provider may impose a reasonable charge for all inspections and copies, *not exceeding the costs incurred by such provider,* provided, however, that a provider may not impose a charge for copying an original mammogram when the original has been furnished to any qualified person and provided, further, that any charge for furnishing an original mammogram pursuant to this section shall not exceed the documented costs associated therewith. However, *the reasonable charge for paper copies shall not exceed seventy-five cents per page.* A qualified person shall not be denied access to patient information solely because of inability to pay.

N.Y. Pub. Health Law § 18(2)(e) (emphases added). The FAC alleges that defendants violated the statute by charging $0.75 per page for copies—an amount plaintiffs allege exceeded defendants' "costs incurred." [9] *See* FAC ¶¶ 10–13.

Defendants move to dismiss this claim, first, on the grounds that they "did not exceed the statutory maximum costs for processing and copying medical records." Healthport Br. at 11. This argument, however, misreads the statute. Section 18(2)(e) allows healthcare providers to impose a "reasonable charge" for copies, provided that this charge: (1) does not exceed "the costs incurred by such provider"; *and* (2) does not exceed "seventy-five cents per page." N.Y. Pub. Health Law § 18(2)(e); *see also Casillo v. St. John's Episcopal Hosp., Smithtown,* 151 Misc.2d 420, 580 N.Y.S.2d 992, 998 (N.Y.Sup.Ct.1992) (" 'Reasonable charge' is intended to be the unifying standard whereby the cost to a patient or qualified person obtaining the reproduced patient's medical record *is limited to costs actually incurred* by the provider, except that the charge for paper copies shall not exceed seventy-five cents per page.") (emphasis added). In other **\*273** words, a healthcare provider may not charge more than the actual "costs incurred" for copies—but that charge is capped at $0.75 per page. *See Zamdborg v. Goldin,* 14 Misc.3d 1207(A), 831 N.Y.S.2d 363, 2004 WL 5138088 (N.Y.Sup.Ct.2004) (granting defendants costs for copying "in the amount actually incurred *up to the limit of* 75 cents per page") (emphasis added).

Defendants assert that the statute thereby sets $0.75 as a presumptively reasonable price, such that a defendant whose actual costs were below $0.75 per page is at liberty to charge the amount. But the statute does not say that: It makes $0.75 a cap on costs; it does not grant authority to a healthcare provider to bill in excess of its actual costs and thereby turn a profit on a patient's copying request. *See Moore v. Ackerman,* 24 Misc.3d 275, 284, 876 N.Y.S.2d 831 (N.Y.Sup.Ct.2009) ("[T]he statute clearly does not establish $0.75 per page as the reasonable cost of copying."). Defendants thus cannot demonstrate compliance with the statute merely because, as alleged, they charged $0.75 per copy. The statute instead required defendants to charge no more than the "costs incurred."

Because the FAC alleges that (1) defendants' cost of making copies was less than $0.75 per page, and (2) defendants charged $0.75 per page, plaintiffs have stated a claim of a violation of § 18(2)(e). Accordingly, defendants' motion to dismiss Count One based on the theory that a $0.75 per page charge is *per se* lawful is denied.

[11] Defendants alternatively seek dismissal on the ground that the statute gives healthcare providers immunity from civil liability. *See* Healthport Br. 13. Section 18(12) states:

> No health care provider shall be subjected to civil liability arising solely from granting or providing access to any patient information in accordance with this section.

N.Y. Pub. Health Law § 18(12). This provision, however, by its terms does not apply here. It gives healthcare providers immunity from lawsuits that allege, "solely" that patient information was disclosed lawfully and as requested. But the FAC alleges more than that: It alleges that the hospitals and their agent, Healthport, overcharged for the photocopies they made for patients, in direct contravention of the statute's cost provision. Defendants' argument would, in fact, read the actual costs limitation—and all other limitations—out of the statute. It would immunize from liability even a hospital who charged an exorbitant sum (*e.g.,* $10, or $100, a page) for copying, upon a patient's request, his or her medical records.

The legislative history confirms that, consistent with its text, the immunity provision was directed to a narrow circumstance—the lawful release of requested information—and was not intended to give a healthcare provider a blank check to overcharge a patient in the course of providing medical records. For instance, in a letter dated July 8, 1987, New York's Senate Majority Leader at the time, James R. Tallon, Jr., wrote to Evan A. Davis, Counsel to then-Governor Mario Cuomo:

> For [Public Health Law § 18] to be effective health care providers should be protected from the fear that they might be held liable for having released the information requested. This legislation would alleviate this concern by providing immunity from civil liability when information is released in good faith upon request.

*See* Goodman Aff. Ex. B. Similarly, in a letter dated July 21, 1987, the Legislative Representative to the then-Mayor of New York City, Edward I. Koch, urged then-Governor Cuomo to approve the immunity provision so as to protect healthcare providers who provide patient information in good faith:

> **\*274** Public Health Law Section 18 provides patients, parents of minor patients, patients' committees and guardians with the right of access to the patient's medical records, unless such review can reasonably be expected to cause substantial and identifiable harm to the patient or others which outweighs the right of access. Subdivision 11 of such law provides protection to a health care provider, who in good faith, denies access to the patient's records. However, no specific civil liability protection is given to a health care provider who in good faith and in accordance with the law's provisions releases patient information.

*Id.* There is nothing in the legislative history that suggests a broader immunity, including one that would protect a health care provider who overcharged in the course of providing requested financial information.

Taking the allegations in the FAC as true, the immunity provision does not shield defendants' conduct from liability. Therefore, although Count One is dismissed for lack of standing, defendants' motion to dismiss Count One for failure to state a claim is denied.

### b. Count Two

Count Two alleges that defendants violated New York General Business Law § 349(a), which provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

 [12]  [13]  [14]  [15] To state a claim under Section 349(a), plaintiffs must allege that the defendants' acts are (1) directed to consumers and (2) deceptive or misleading in a material way, and that (3) plaintiffs have been "injured by reason thereof." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25–26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). Plaintiffs need not "establish the defendant's intent to defraud or mislead," or prove "justifiable reliance"; however, to obtain compensatory damages, plaintiffs "must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Id.* at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. Deceptive acts and practices—either "representations or omissions"—are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* "In the case of omissions," the statute does not require businesses to "guarantee that each consumer has all relevant information specific to its situation," but the scenario is "quite different" where the "business alone possesses material information that is relevant to the consumer and fails to provide this information." *Id.*

 [16] Here, plaintiffs allege that defendants acted in a deceptive or misleading manner by charging $0.75 per page for copies, while failing to disclose to consumers that (1) the law limited them to recouping actual costs up to $0.75 and (2) defendants' actual photocopying costs were less than $0.75. *See* FAC ¶ 125. Taking these allegations as true, Count Two states a plausible claim with respect to the second of these omissions: the failure to disclose that defendants' actual cost of photocopying was below $0.75 per page. Without disclosure of such a cost differential, a fact known only to defendants, a reasonable consumer, appreciating that the statute permitted healthcare providers to charge up to $0.75 cents per page to recoup their actual costs, could be misled to believe that defendants' actual cost was $0.75 per page (or more).[10] *Accord In re Coordinated Title* **\*275** *Ins. Cases,* 2 Misc.3d 1007(A), 784 N.Y.S.2d 919, 2004 WL 690380 (N.Y.Sup.Ct.2004) (granting motion for class certification of a Section 349(a) claim where the "question raised in the complaint involve[d] the conduct of the defendants in allegedly overcharging or failing to notify the members of the putative class of the availability of the mandated discounts"). And plaintiffs have plausibly pled that these material omissions induced Simonson to pay an inflated price for copies of their medical records.

Defendants also invoke the "voluntary payment" doctrine, but it is not applicable here. That defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs "voluntarily agreed" to pay this figure, does not preclude a claim under Section 349(a), where defendants allegedly failed to disclose that their actual costs were below that figure. *See Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (permitting a § 349(a) claim where the "business alone possesses material information that is relevant to the consumer and fails to provide this information"); *MacDonell v. PHH Mortgage Corp.,* 45 A.D.3d 537, 846 N.Y.S.2d 223, 224 (2d Dep't 2007) ("the voluntary payment doctrine will not bar" causes of action under General Business Law § 349(a)) (citations omitted); *see also* Sect. II.B.2.c, *infra* (discussing voluntary payment doctrine in context of plaintiffs' unjust enrichment claims).

Accordingly, although Count Two is dismissed for lack of standing, the motion to dismiss Count Two for failure to state a claim is denied.

### c. Count Three

 [17] Count Three claims unjust enrichment. To state such a claim in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at plaintiff's expense; and (3) that "equity and good conscience require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000) (citation omitted); *see also Albrechta v. Broome Cnty. Indus. Dev. Agency,* 274 A.D.2d 651, 710 N.Y.S.2d 709 (3d Dep't 2000).

 [18] Plaintiffs fail to state a claim for unjust enrichment against the hospitals because the FAC does not allege that these defendants benefitted from Healthport's alleged overcharging for copies. Rather, as pled, Healthport was the sole entity that received the excess charges at issue. Because Mount Sinai, Beth Israel, and Montefiore were not "enriched" at all, plaintiffs fail to state a claim for unjust enrichment as to these three defendants. Accordingly, Count Three, which the Court is already dismissing for lack of standing, must independently be dismissed, to the extent it is brought against Mount Sinai, Beth Israel, and Montefiore, for failure to state a claim.

As to Healthport, however, plaintiffs have stated a claim for unjust enrichment. As noted, the FAC plausibly asserts that Healthport received a windfall by charging $0.75 per page to make copies, more than its actual costs, and that, as a result, plaintiffs suffered financial loss. *See* FAC ¶¶ 148–49. The FAC also alleges, reasonably, that equity requires Healthport to provide restitution to plaintiffs in the amount that they were "unjustly enriched." *Id.* ¶ 150. As to Healthport, then, all three elements for an unjust enrichment claim are adequately pled.

[19] [20] As with Count Two, Healthport asserts that the unjust enrichment ***276** claim in Count Three is barred under New York law by the "voluntary payment doctrine." Healthport Br. at 17. "That common-law doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U–A Columbia Cablevision of Westchester, Inc.,* 100 N.Y.2d 525, 526, 760 N.Y.S.2d 726, 790 N.E.2d 1155 (2003). But that defense is inapplicable here. The FAC alleges that plaintiffs lacked full knowledge of the facts when they agreed to pay $0.75 per page for copies of their records—specifically, they were not told that Healthport was proposing to charge them more than the costs it incurred for copying these records. Therefore, on the allegations in the FAC, the voluntary payment doctrine does not bar plaintiffs' claim for unjust enrichment against Healthport.

Accordingly, the dismissal of Count Three as against Healthport is based solely on the lack of standing, and is not based on a failure to state a claim.

### C. Timeliness

Finally, Healthport and Mount Sinai move to dismiss as untimely the claims brought by Spiro.[11] Each of the three damages claims is subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(2) (claims asserting violations of New York statutes—like Public Health Law § 18 and General Business Law § 349(a)—must commence within three years of the date of accrual); *Matana v. Merkin,* 957 F.Supp.2d 473, 494 (S.D.N.Y.2013) (unjust enrichment claims for damages have a three-year statute of limitations). Under New York law, "the applicable Statute of Limitations is triggered once a cause of action accrues." *Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.,* 89 N.Y.2d 214, 221, 652 N.Y.S.2d 584, 674 N.E.2d 1349 (1996). The dispositive question, then, is when each of Spiro's claims accrued.

[21] [22] "In general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon v. Guardian Life Ins. Co. of Am.,* 96 N.Y.2d 201, 210, 727 N.Y.S.2d 30, 750 N.E.2d 1078 (2001) (citations omitted); *see also* Black's Law Dictionary 23 (9th ed.2009) (defining "accrue" as "[t]o come into existence as an enforceable claim or right"); *accord Gabelli v. S.E.C.,* ––– U.S. ––––, 133 S.Ct. 1216, 1220, 185 L.Ed.2d 297 (2013) ("Thus the 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.' ") (quoting *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). "In an action to recover for a liability created or imposed by statute, the statutory language determines the elements of the claim which must exist before the action accrues." *Id.* (citation omitted); *see also Statler v. Dell, Inc.,* 775 F.Supp.2d 474, 484 (E.D.N.Y.2011) ("Accrual occurs when plaintiff is injured by the deceptive act or practice that violated the statute.").

[23] As to Count One, § 18(2)(e) prohibits healthcare providers from charging more than the "costs incurred" for copies of medical records. As to Count Two, New York's General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of ***277** any service," and gives a right of action to "any person who has been injured by reason of any violation of this section." N.Y. Gen. Bus. Law §§ 349(a) and (h). Accordingly, these two claims accrued when the respective statutes were violated—*i.e.,* when Healthport, and by extension its alleged principal Mount Sinai, received more than the costs incurred for copying Spiro's medical records. The same is true for Count Three, because a claim for unjust enrichment begins to accrue " 'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.' " *Matana,* 957 F.Supp.2d at 494 (quoting *Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 364 (2d Cir.2013)).

[24] Here, the FAC alleges that Simonson paid the $74 bill for Spiro's medical records—reflecting a charge of $0.75 per page copied—on January 28, 2011. And the last

alleged wrongful act committed by Healthport, accepting payment of the $74 bill, occurred the same day. *See* FAC ¶ 84. As of that payment, all the facts necessary to establish a claim against defendants had occurred, such that Counts One, Two, and Three of this lawsuit could have been filed at that time. The original complaint in this case, however, was filed more than three years later, on March 12, 2014. *See* Dkt. 2. Accordingly, all three of Spiro's claims are barred by the statute of limitations and must be dismissed, with prejudice.

It is of no moment that Spiro, long afterwards, reimbursed Simonson for the photocopying costs he had paid on January 28, 2011. The arrangement or dealings between Spiro and his attorney, if any, as to when the attorney would be reimbursed for these costs is not relevant to determining when Spiro's claims accrued for statute of limitations purposes. Indeed, under the law, for the statute of limitations to begin running on his claims, Spiro need not have even known of the relevant injury. *See Ely–Cruikshank Co., Inc. v. Bank of Montreal,* 81 N.Y.2d 399, 403, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993) ("The dissent's heavy reliance on [plaintiff's] lack of knowledge ignores this Court's own precedents and the policy considerations relating to the Statute of Limitations.... [T]he statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury."); *accord T & N PLC v. Fred S. James & Co. of N.Y., Inc.,* 29 F.3d 57, 60 (2d Cir.1994) (in the context of a breach-of-contract case, "the Court of Appeals has made clear that neither knowledge of the breach nor cognizable damages are required to start the statute of limitations running at breach"). The relevant issue instead is when the elements of the cause of action giving rise to liability on the part of Healthport and Mount Sinai were in place. Here, it was on January 28, 2011, when Simonson paid Healthport $0.75 per page for copies of Spiro's medical records.

Plaintiffs' contrary position—that Spiro's claims did not accrue until he reimbursed Simonson on April 12, 2012, *see* FAC ¶ 88—lacks case support and is unworkable. It would effectively give a patient the power to toll indefinitely the statute of limitations on these claims, simply by arranging to have a third party seek copies of the medical records and then delaying repayment to that party. Spiro could then choose when to trigger the accrual of the statute of limitations by deciding when to reimburse the third party. Such an arrangement would undermine the important policy considerations underlying New York's statute of limitations—namely, to protect "parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or **\*278** the destruction of documents, it might be impossible to establish the truth." *Hernandez v. N.Y. City Health & Hosps. Corp.,* 78 N.Y.2d 687, 698, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991); *see also Ely–Cruikshank,* 81 N.Y.2d at 404, 599 N.Y.S.2d 501, 615 N.E.2d 985 ("Indeed, we have noted that Statutes of Limitation are statutes of repose representing a *legislative* judgment that occasional hardship is outweighed by the advantage of barring stale claims.") (internal quotation marks omitted).

Counts One, Two, and Three must therefore be dismissed with respect to Spiro, not only on grounds of standing, but also because they are barred by the statute of limitations. And for the same reason, Counts One, Two, and Three must be dismissed with respect to plaintiff Torres. Simonson paid Healthport for copies of Torres's medical records on February 25, 2010, *see* FAC ¶ 97, but the original Complaint was filed more than four years later, on March 12, 2014. Therefore, the claims brought by Spiro and Torres are dismissed, with prejudice, as untimely.

**CONCLUSION**

For the foregoing reasons, the Court dismisses the FAC in its entirety. This dismissal is with prejudice, except that plaintiff Rochniak is authorized to file a Second Amended Complaint, limited to her claims for money damages. Specifically, Rochniak may replead Counts One and Two against Healthport and Beth Israel, and Count Three against Healthport only.

Rochniak will file the Second Amended Complaint by September 12, 2014, and Beth Israel and Healthport will file their respective Answers, or other responsive pleadings, by October 3, 2014. The Court will then set a date and time for the parties to appear for an initial pretrial conference. The Clerk of Court is directed to terminate the motions pending at docket numbers 5, 21, 25, and 28.

SO ORDERED.

**All Citations**

73 F.Supp.3d 259, Med & Med GD (CCH) P 305,063

Footnotes

1   These facts are drawn primarily from the FAC. For the purpose of resolving the motions to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir.2012). The Court also considered the documents attached to the Declaration of Rebecca Brazzano in support of defendant Healthport's Motion to Dismiss. Dkt. 27 ("Brazzano Decl."). Because these documents were incorporated into the FAC by reference, they are properly considered on a motion to dismiss. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,* 752 F.3d 173, 179 (2d Cir.2014). Finally, the Court considered the documents attached to the Affirmation of Edward S. Goodman in Opposition to Defendants' Motion to Dismiss. Dkt. 32 ("Goodman Aff."). These documents are "bill jackets from New York Senate Bills 6095 and 4203" that bear on the legislative history of the statutes at issue in this case. Because these documents are not factual in nature, but are public records asserted to bear on the meaning of a statute, they are properly considered on a motion to dismiss. *See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998) ( "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

2   Technically, as to Torres and Ruzhinskaya, who each sue as the executor of an estate, it was the estate's decedent who filed the personal injury suit. Because these executors stand in the shoes of these decedents, the Court, for simplicity's sake, describes the plaintiffs here as the plaintiffs in the personal injury suits.

3   Simonson also currently represents the plaintiffs in connection with this putative class action.

4   Healthport appears to dispute, as a factual matter, that plaintiffs ultimately ever paid "one dime themselves." Healthport Reply Br. at 2 n. 2. But plaintiffs have pled to the contrary in the FAC. And at this initial stage, the Court must credit that averment. That is because each element of standing need only be supported " 'in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation,' " and at the motion to dismiss stage, the Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver,* 621 F.3d at 225 (quoting *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130).

5   Plaintiffs do not allege that the Simonson firm assigned its claims against defendants to the named plaintiffs, let alone the date and terms of any such assignment. *See* 6A Wright & Miller § 1545, at 346–348 ("[F]ederal courts have held that an assignee for purposes of collection who holds legal title to the debt according to the governing substantive law is the real party in interest even though the assignee must account to the assignor for whatever is recovered in the action."); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008).

6   The FAC does state that: "Plaintiff, through his attorneys, Simonson Hess Leibowitz & Goodman, P.C., paid said $74.00 bill on or about January 28, 2011." FAC ¶ 84; *see also id.* ¶ 97 ("paid said $28.25 bill on or about February 25, 2010"); ¶ 110 ("paid said $140.75 bill on or about July 8, 2013"). It is, however, undisputed that the Simonson firm, in fact, paid these bills. The FAC does not explain what is meant by the statement that *plaintiffs* thereby paid these bills. The Court cannot treat this conclusory and elliptical statement as equivalent to a concrete factual allegation that the legal duty to pay these bills, or to reimburse Simonson for doing so, fell upon plaintiffs as of the time that Simonson incurred the charge.

7   Separately, the three hospital defendants, Beth Israel, Mount Sinai, and Montefiore challenge standing on the grounds that any injury suffered by plaintiffs was caused, not by them, but by Healthport. *See* Hospital Br. at 6 (stating that the hospitals only "provided plaintiffs with access to the medical records they requested, and turned over those records to defendant Healthport, an independent entity, for duplication and invoicing"). Accordingly, they argue, plaintiffs lack standing to bring claims against them. This argument is unpersuasive. The FAC alleges that Healthport was the hospitals' agent for the purpose of responding to patients' requests for medical records held by the hospitals. *See* FAC ¶¶ 76–80, 89–93, 102–106. And under New York law, "the principal will be liable to third parties for the acts of its agent that were within the scope of the agent's actual or apparent authority." *Amusement Indus., Inc. v. Stern,* 693 F.Supp.2d 327, 344 (S.D.N.Y.2010) (citing *Citibank, N.A. v. Nyland (CF8) Ltd.,* 878 F.2d 620, 623–24 (2d Cir.1989)); *see also id.* at 343 ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (citing *In re Shulman Transp. Enters., Inc.,* 744 F.2d 293, 295 (2d Cir.1984)). To adequately assert an agency relationship at the pleadings stage, plaintiffs "need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and

|   |   |
|---|---|
| | agent." *Id.* at 344 (citation omitted). The FAC has done so here—and Healthport, the agent, itself concedes that it was the hospitals' agent for purposes of copying patients' requested medical records. *See* Healthport Reply Br. at 7 n. 5. |
| 8 | As Healthport notes, plaintiffs unhelpfully failed to respond to the motion to dismiss Count Four for lack of standing. Healthport Reply Br. at 3. Plaintiffs thereby left unclear whether they even continue to pursue injunctive relief. In any case, for the reasons stated above, the FAC, as pled, fails to allege facts that would establish plaintiffs' standing to pursue such relief. Because plaintiffs have already had an opportunity to amend their Complaint to address this deficiency, they are not authorized to amend the FAC as to Count Four, the request for injunctive relief. |
| 9 | Defendants do not contest that N.Y. Public Law § 18 provides a private right of action to a patient challenging overcharging for copies of his or her medical records. The Court assumes *arguendo* that the statute does so. |
| 10 | To the extent that Count Two faults defendants for not disclosing the legal requirements of the statute, that claim is not cognizable. Plaintiffs do not point to any authority requiring such a disclosure. And § 18(2)(e)'s requirements were equally accessible to plaintiffs (and their law firm, Simonson). |
| 11 | For reasons that are elusive, the FAC also brings claims in the name of Spiro's wife, Ann Marie Spiro. Her claims must be dismissed for the same reasons as her husband's claims. The Court, accordingly, does not consider whether independent grounds exist to dismiss her claims. |

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.