**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **AMELIA RIOS, ROBERT GREEN AND SAYRA GREEN,** | § § § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **v.** | § | **CIV. ACTION NO. 5:18-CV-00538-FB-ESC** |
| | § | |
| **CIOX HEALTH, LLC, HEALTHPORT TECHNOLOGIES, LLC AND SCANSTAT, L.P.** | § § § § | |
| **DEFENDANTS.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS NIX HOSPITALS SYSTEM, LLC AND
SCANSTAT, L.P.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

TO THE HONORABLE ELIZABETH S. CHESTNEY, UNITED STATES MAGISTRATE JUDGE:

NOW COME Amelia Rios, Robert Green, and Sayra Green, Plaintiffs in the above-styled and numbered cause, and file this Response to Defendants Nix Hospitals System, LLC ("Nix") and ScanSTAT, L.P.'s ("ScanSTAT's")(collectively, "Defendants'") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. 27), and respectfully show the Court the following:

**I.
INTRODUCTION**

The issues raised in this lawsuit have never before been decided by a federal court in the Fifth Circuit.  This Court therefore has a clean slate on which to write its interpretation of the interplay between the Texas Debt Collection Practices Act ("TDCPA") and the federal Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), and to decide whether excessive charges for medical records under the latter are actionable under the former.

This Court is further empowered to apply longstanding Texas Supreme Court precedent, supported by a provision of the Texas Health and Human Safety Code, and find that under Texas law attorneys are authorized to submit requests for medical records to their clients' healthcare providers and ensure that those providers only charge their clients a reasonable, cost-based fee for such records as the unambiguous text of the HITECH Act requires.

Defendants ask this Court to follow a case decided by the Ninth Circuit Court of Appeals before the HITECH Act became law, and a single unpublished district court case from Alabama, and thereby adopt a patently unreasonable interpretation of the HITECH Act. According to Defendants, if a patient requests his or her medical records without the assistance of a lawyer, the healthcare provider may only charge a reasonable, cost-based fee for such records. But if the patient's lawyer assists the patient in making this request, an exorbitant fee for such records may be charged. This interpretation contradicts the plain language of the HITECH Act and its implementing regulations, and disregards the bedrock principle of Texas law that an attorney is an agent of the client who asserts the client's rights on the client's behalf.

This Court should uphold the plain text of the HITECH Act, which clearly provides that clients may direct their healthcare providers to send their medical records to their attorney and may only be charged a reasonable, cost-based fee for this service. Regulations issued by the United States Department of Health and Human Services ("HHS") support Plaintiffs' position in this matter. But to the extent some of the unofficial "guidelines" issued by HHS contradict the unambiguous text of the HITECH Act, they are not entitled to any deference from this Court and should be disregarded.

When healthcare providers like the Nix and records companies like ScanSTAT fail to comply with the HITECH Act and overcharge patients for their medical records, they have "collected or attempted to collect a charge, fee, or expense" that is not "legally chargeable" to Plaintiffs and have violated multiple other provisions of the TDCPA.  See, Tex. Fin. Code § 392.303(a)(2), § 392.304(a)(8), § 392.304(a)(12), and § 392.304(a)(19).

These wrongful acts have harmed Plaintiffs, as they have caused Plaintiffs to incur a debt which they never should have incurred.  Although Defendants addressed the bill for Plaintiffs' medical records to their attorney, such unilateral choice does not negate the fact that Plaintiffs requested the records and Plaintiffs are ultimately responsible to pay of the amounts charged for medical records.  Thus, Plaintiffs have suffered a concrete injury via Defendants' imposition of inflated, unauthorized charges for their medical records, which may be remedied by this Court via the award of damages or the issuance of an injunction.

Defendants admit that they provided services in connection with the transactions in question.  Therefore, their conduct is subject to the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") and violates that act through its tie in provisions to the TDCPA.  And Defendants would be unjustly enriched if they were permitted to persist in assessing unlawful charges for medical records as described herein.

## II.
## ARGUMENT AND AUTHORITIES

### A.  Standard of Review

A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982).  When considering a motion to dismiss under Rule 12(b)(6) for failure to

state a claim upon which relief can be granted, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. See *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2009). Unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claim," the complaint should not be dismissed for failure to state a claim, and leave to amend should be liberally granted. *Fernandez–Montes* at 284–85 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 787 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings only if they are referred to in the complaint and are central to plaintiffs' claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000) (quotations and citation omitted).  If the Court considers matters outside of the pleadings, it must convert a motion to dismiss into a Rule 56 motion for summary judgment. *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998).

### B.  Plain Language of Unambiguous HITECH Act Must Be Enforced

When asked to interpret a statute, Courts must begin with the language of the statute. The first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)). The inquiry ceases "if the statutory language is

unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* at 340.

"Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461 (2002)(citations omitted).

Here, the HITECH Act is plain and unambiguous.  It states that:

**(e) Access to certain information in electronic format**
In applying section 164.524 of title 45, Code of Federal Regulations, in the case that a covered entity uses or maintains an electronic health record with respect to protected health information of an individual--

> **(1)** *the individual shall have a right to obtain from such covered entity a copy of such information in an electronic format and, if the individual chooses, to direct the covered entity to transmit such copy directly to an entity or person designated by the individual*, provided that any such choice is *clear, conspicuous, and specific*;
> **(2)** if the individual makes a request to a business associate for access to, or a copy of, protected health information about the individual, or if an individual makes a request to a business associate to grant such access to, or transmit such copy directly to, a person or entity designated by the individual, a business associate may provide the individual with such access or copy, which may be in an electronic form, *or grant or transmit such access or copy to such person or entity designated by the individual*; and
> **(3)** notwithstanding paragraph (c)(4) of such section, *any fee that the covered entity may impose for providing such individual with a copy of such information* (or a summary or explanation of such information) if such copy (or summary or explanation) is in an electronic form *shall not be greater than the entity's labor costs in responding to the request for the copy* (or summary or explanation).

42 U.S.C.A. § 17935(e)(emphasis added)

Thus, the plain and unambiguous text of the HITECH Act allows a patient to direct a healthcare provider to send his or her medical records to his or her attorney.  And that is just what each of the Plaintiffs did, in signed requests that were "clear, conspicuous, and specific."  *Id.*; see also, Defendants' Motion to Dismiss at Ex. A, p. 10; Ex. B, at p. 6, Ex. C, at p. 6.  But rather than complying with these requests and properly charging the

Plaintiffs a reasonable, cost-based fee for such records as allowed by the HITECH Act, Defendants charged Plaintiffs inflated amounts that included "basic fees" for the search and retrieval of Plaintiffs' medical records which are specifically disallowed by the HITECH Act and its implementing regulations.   See, 45 CFR § 164.524(c)(4)(allowable fee includes only the labor for copying the medical records to an electronic medium, plus the cost of the electronic medium and the cost of postage).

Nothing in the text of the HITECH Act limits the type of entity or person that can be designated by the patient to receive his or her medical records, and nothing in the text of the HITECH Act says that a patient's request cannot be forwarded to the healthcare provider by his or her attorney.  Defendants' interpretation of the statute, which grafts such limitations onto the plain text of the statute without basis, must therefore be rejected.

Furthermore, HHS's formal implementing regulations for the HITECH Act confirm that a patient's request that medical records be sent to a third party must only meet three simple requirements: (1) the request must be in writing, (2) the request must be signed by the individual, and (3) the request must clearly identify the designated person and where the individual's personal health information is to be sent. 45 C.F.R. § 164.524(c)(3)(ii).  Here, the Plaintiffs' requests met all three of these requirements and thus properly invoked the fee limitations of the HITECH Act.

**C.  *Webb* case predates the HITECH Act, and is factually and legally inapposite**

Defendants cite *Webb v. Smart Document Sols., LLC*, a Ninth Circuit case that predates the HITECH Act, in support of their claim that Plaintiffs did not properly invoke the HITECH Act when they asked the Nix to send copies of their medical records to their attorneys.   See, Motion to Dismiss at pp. 6-7.  But the HITECH Act *expands* patients'

rights to obtain their medical records for a reasonable, cost-based fee, and explicitly *allows* patients to designate third parties to receive such records. As such, a case that was decided before the HITECH Act came into effect and that cites HHS regulations that predate the HITECH Act does not meaningfully assist this Court in construing the HITECH Act or Plaintiffs' claims herein.

Additionally, the *Webb* case is based in part on the application of California agency law and on a California Supreme Court case that explicitly found that attorneys could not directly request copies of their clients' medical records and thereby invoke the fee limitations provided by federal law. But as set forth in Part II.E below, Texas law provides that an attorney has the broad authority to act for and bind a client, and a Texas statute explicitly authorizes an attorney to request a client's medical records. Thus, the application of Texas agency law supports Plaintiffs' claims and distinguishes them from the claims made by the California plaintiffs in *Webb*.

Furthermore, the *Webb* case is factually distinguishable. In that case, a law firm "requested [its client's] records on his behalf from his treating hospital." *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007). There is no indication that the client himself signed a request for his medical records, or otherwise directed the hospital to send his records to his law firm. In contrast, here the Plaintiffs each personally signed a request that the Nix provide their medical records to their attorney. Thus, Plaintiffs' requests for medical records properly invoked the HITECH Act and are distinguishable from the request at issue in *Webb*.

In fact, Plaintiffs' requests for medical records in this case comport with the opinion in *Webb*, in which the court stated that "nothing in the regulations prevents a law firm from

drafting or mailing the request for records on behalf of its clients, or from directing that the records be sent to its office."  *Id.*  The *Webb* court further verified that its holding "in no way precludes attorneys from assisting their clients in accessing and obtaining their medical records without triggering the hefty fees" and that such holding does "not address [the] presumably common scenarios in which the client signs the request and asks the documents to be sent to the attorney, or the attorney prepares the documents on his or her letterhead and the client personally signs the request."  *Id.* at 1089.

### D.  *Bocage* case is factually distinguishable, and wrongly decided on the law

Defendants further cite the *Bocage* case, an unpublished district court case that examined issues similar to those raised in the present lawsuit.  However, the *Bocage* case apparently turns on the district judge's factual determination that the subject requests for medical records "were made by Plaintiffs' attorneys, not by Plaintiffs themselves."  *Bocage v. Acton Corp.*, No. 2:17-CV-01201-RDP, 2018 WL 905351, at *2 (N.D. Ala. Feb. 15, 2018).  Evidently, the district judge decided that the "written requests, signed by the individuals, that clearly identified their attorneys as their designees for the transmissions of their [medical records]" at issue in that case did not constitute requests for medical records that invoked the fee limitations of the HITECH Act but rather "merely authorize[d] his or her [medical records] to be disclosed."  *Id.* at *5.

Thus, *Bocage* turns on a fact specific inquiry as to whether the requests at issue in that case properly invoked the HITECH Act.  And without the opportunity to review the actual requests at issue in *Bocage*, this Court cannot determine if such requests are similar to or different than the requests at issue in the present case.

Furthermore, this Court is not bound by an unpublished case issued by a federal judge in Alabama. The *Bocage* court's distinction between a *request* that medical records be sent to a party's attorney (which clearly does invoke the fee limitations of the HITECH Act), and an *authorization* to send medical records to a party's attorney (which supposedly does not invoke the fee limitations of the HITECH Act) is arbitrary and untethered to the actual text of the statute. This Court should thus apply the plain language of the statute and find that Plaintiffs' medical records requests at issue in this case constitute "clear, conspicuous, and specific" requests that the Nix transmit such records "to an entity or person designated" by Plaintiffs, within the meaning of the HITECH Act. 42 U.S.C.A. § 17935(e)(1).

The *Bocage* decision cites HHS's formal implementing regulations for the HITECH Act, which merely require that a request that medical records be sent to a third party be in writing, signed by the patient, and clearly identify the third party to whom the records should be sent. *Bocage*, at *5-6; see also, 45 C.F.R. § 164.524(c)(3)(ii). But the Court does not explain why the "written requests, signed by the individuals, that clearly identified their attorneys as their designees for the transmissions of their [medical records]" at issue in that case do not comply with this regulation. *Bocage*, at *5-6. The *Bocage* case is thus poorly reasoned and should not be followed by this Court.

Here, Defendants complain that Plaintiffs' requests are "poorly constructed" form letters. But there is no doubt that the requests were in writing, signed by the Plaintiffs, and clearly identified both the patient and the attorney to whom the medical records were to be sent. And Defendants cannot plausibly claim that Plaintiffs' requests were not specific enough or that they were misled by the form nature of Plaintiffs' requests, when

they responded to such requests within a few business days with invoices showing that the records in question had been identified and would be provided (albeit at inflated charges).  See, Defendants' Motion to Dismiss at Exhibits E, F, and G.

The *Bocage* court cites HHS "guidelines" that purport to "establish that an individual or an individual's personal representative — not merely the individual's attorney — must directly request the protected health information." *Bocage*, at *5-6.   But the "guidelines" in question actually make it clear that "written access requests by individuals to have a copy of their [medical records] sent to a third party that include [the] minimal elements [of 45 CFR 164.524(c)(3)(ii)] are subject to the same fee limitations in the Privacy Rule that apply to requests by individuals to have a copy of their [medical records] sent to themselves. ***This is true regardless of whether the access request was submitted to the covered entity by the individual directly or forwarded to the covered entity by a third party on behalf and at the direction of the individual."*** *Id.*; (citing *Individuals' Rights under HIPAA to Access Their Health Information 45 CFR § 164.524,* U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html   (last   visited   September   3, 2018)(emphasis added).

The HHS "guidelines" go on to distinguish a situation in which a third party requests medical records on its own behalf pursuant to a patient's Health Insurance Portability and Accountability Act of 1996 ("HIPAA") authorization.   *Id.*   But there is nothing in the "guidelines" that provides that if a patient's signed request directing a provider to send medical records to an attorney is accompanied by a HIPAA authorization (such as the requests at issue in the present case), that request somehow becomes ineligible for the

limitations on fees established by the HITECH Act.  Rather, the "guidelines" again clarify that "where the third party is forwarding — on behalf and at the direction of the individual — the individual's access request for a covered entity to direct a copy of the individual's [medical records] to the third party, the fee limitations apply."  *Id.*

The HITECH Act is unambiguous and thus the Court is not permitted to refer to HHS "guidelines" to assist in its interpretation of the law.  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984).  Even if it was to properly consider the HHS "guidelines" in construing the HITECH Act, the Court must reject administrative constructions which are contrary to clear congressional intent.  *Id.*  And agency interpretations of a statute are not entitled to deference if they lead to absurd results and "consequences Congress could not have intended."  *Mellouli v. Lynch,* 135 S. Ct. 1980, 1989 (2015) (citation omitted).

This is especially true where, as is apparently the case here, the "guidelines" in question were not the subject of formal notice-and-comment rulemaking.  See, e.g. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (level of deference to agency interpretation "will depend upon the thoroughness evident in its consideration").

Here, the fact that Plaintiffs included HIPAA authorizations with their signed requests directing the Nix to provide their medical records to their attorney does not convert Plaintiffs' requests into a third party request.  To the extent that HHS' "guidelines" suggest otherwise, they should be disregarded.  This is especially true where, as here, the formal published commentary promulgated by HHS in connection with the HITECH Act make clear that a patient's "written request for protected health information to be sent to a designated person is distinct from an authorization form."  78 Fed. Reg. 5566, 5635.

Plaintiffs directed the Nix to provide their medical records to a designated third party, and thus a HIPAA authorization is at least arguably required.  See, 45 CFR 164.508(a)(1)("a covered entity may not use or disclose protected health information without an authorization.").

### E.  Attorneys are Agents of Their Clients and May Invoke the HITECH Act on their Clients' Behalf

Under Texas common law, "[t]he general rule is that the relationship of attorney and client is one of agency. Under this rule, the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents."  *Texas Emp. Ins. Ass'n v. Wermske*, 162 Tex. 540, 545, 349 S.W.2d 90, 93 (1961).

Furthermore, Texas statutory law makes it clear that "an attorney retained by the patient" is a legally authorized representative who may directly request a client's medical records on the client's behalf.  Tex. Health & Safety Code § 241.151 and § 241.152.

And while HIPAA generally preempts state law, its "regulation[s] ... shall not supersede a contrary provision of State law, if the provision of State law imposes requirements, standards, or implementation specifications that are more stringent" than HIPAA's. 42 U.S.C. § 1320d–2 note.  "More stringent" laws are those that "permit[ ] greater rights of access" for the "individual, who is the subject of the individually identifiable health information."  45 C.F.R. §§ 160.202 and 160.203.

Thus, under Texas law an attorney is authorized to directly request a client's medical records and to invoke the HITECH Act's limitations on allowable fees.  This application of Texas law obviates the need to make a distinction between an attorney's request for a client's medical records and a client's request that medical records be sent

to an attorney, a pointless distinction that the primary case cited by Defendants described as "'circuitous,' if not downright silly."  *Webb*, 499 F.3d at 1089 (citation omitted).

### F.  Plaintiffs Have Standing to Challenge the Imposition of Inflated Charges

Standing has three elements: First, the plaintiff[s] must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Here, Plaintiffs have alleged that they requested their medical records from Defendants, and that Defendants imposed charges for those medical records that exceeded the limits imposed by the HITECH Act.   See, Plaintiffs' First Amended Complaint at ¶ 38.  Thus, Plaintiffs have alleged a wrongful act that threatens actual or imminent harm to Plaintiffs, as Defendants have sought to impose unlawful charges on Plaintiffs in connection with medical records requests made by Plaintiffs.

Plaintiffs make it clear that they are ultimately responsible for any charges imposed by Defendants for such medical records, pursuant to their standard contingent fee contracts with their attorney.  *Id.*  Thus, the fact that Defendants unilaterally decided to list Plaintiffs' attorneys' address as the "Billing Address" on the invoices in question does not negate the fact that ultimately these records were requested by Plaintiffs and the charges

incurred for these records are the responsibility of Plaintiffs.  See, Defendants' Motion to Dismiss at Ex. E-G.  The invoices themselves list Plaintiffs as the patients in question, and do not clearly indicate whether Defendants claim that the Plaintiffs are liable for the amount claimed or not.  *Id.*

In the case of Plaintiff Sayra Green, one of the unlawful charges was paid by her attorney on her behalf.  See, Plaintiffs' First Amended Complaint at ¶ 28; see also, Defendants' Motion to Dismiss at Ex. D.  In the case of Plaintiff Amelia Rios, the charges imposed by Defendants were withheld from the proceeds of the settlement of her personal injury claim.  See, Plaintiffs' First Amended Complaint at ¶ 38.  And in the case of Plaintiff Robert Green, his personal injury claim is still pending and as such no distribution of proceeds has occurred and thus no final accounting of litigation expenses has been completed.  See, Cause No. 2017CI21172; *Robert Green vs. Billy Garza d/b/a Guillermo's Deli, Guillermo's, LLC d/b/a Guillermo's Deli, and Paul Carter*; In the 45th Judicial District Court of Bexar County, Texas.

The Second Circuit Court of Appeals considered a similar challenge to a plaintiff's standing to contest excessive charges for medical records, and held that the plaintiff had standing to contest such charges even if the plaintiff's attorney acted as an agent for the plaintiff in requesting and paying for the medical records. See, *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2nd Cir. 2016); see also, *Spiro v. HealthPort Technologies, LLC*, 73 F.Supp.3d 259, 278 (S.D.N.Y. 2014)(allowing plaintiff to replead so as to clarify her allegation that she was ultimately responsible for payment of the contested medical record charges).

And in any event, Defendants' very act of imposing unlawful charges on Plaintiffs in violation of the TDCPA is sufficient to confer standing on Plaintiffs.  Injury in fact is the "invasion of a legally protected interest." *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).  Here, the HITECH Act provides Plaintiffs with a legally protected interest to only be charged a reasonable, cost-based fee for their medical records.  And the TDCPA itself prohibits any "attempt" to "collect a charge, fee, or expense" that is not "legally chargeable." See, Tex. Fin. Code § 392.303(a)(2).

Furthermore, Plaintiffs have standing to challenge the propriety of such charges and to seek an injunction prohibiting the continued imposition of such charges on Plaintiffs and the class they seek to represent.  See, Tex. Fin. Code § 392.403 ("A person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter…").  Plaintiffs have alleged that Defendants' practices are widespread and continuing, and that injunctive relief would protect Plaintiffs and the class from Defendants' ongoing violations of the TDCPA into the future.  See, Plaintiffs' First Amended Complaint at ¶ 60.

Defendants themselves assert that they have the right to continue to charge inflated amounts for medical records if an attorney forwards a client's request for medical records to a healthcare provider, and/or if the provider unilaterally decides to send the invoice for such medical records to the attorney.  See, Defendants' Motion to Dismiss at p. 2.  Thus, Plaintiffs have standing to seek an injunction to stop Defendants' ongoing violation of their rights and the rights of the class they seek to represent.  See, *James v. City of Dallas, Tex.*, 254 F.3d 551, 564 (5th Cir. 2001)

Finally, the invoices in question threaten that Defendants will "defer to a collection agency" if the invoices are not paid within 30 days.  See, Defendants' Motion to Dismiss at Ex. E-G.  Plaintiffs have alleged that "a favorable decision in Plaintiffs' favor will address and eliminate such claimed liability and will address and eliminate the actual or imminent harm to Plaintiffs' credit rating and reputation caused by the imposition of such inflated charges."  See, Plaintiffs' First Amended Complaint at ¶ 38.  Plaintiffs have therefore plausibly alleged that "[t]he continued threat of collection actions…based on the unpaid debt also suffices to demonstrate the likelihood of real and immediate future injury." *James*, 254 F.3d at 564.

While Defendants claim that "Plaintiffs were not billed so Plaintiffs' credit ratings will not be impacted," such a conclusory statement is outside the pleadings and is not supported by evidence and as such should not be considered by this Court in deciding a Motion to Dismiss but would instead be the subject of a trial or dispositive motion after an opportunity to conduct discovery has been afforded to Plaintiffs.  Fed. R. Civ. P. 12(d); see also, *Burns*, 139 F.3d at 517 (5th Cir. 1998).

### G. Plaintiffs' Claims under the TDCPA Are Properly Predicated on Defendants' Illegal Charges Pursuant to the HITECH Act

As set forth above, Defendants cannot, under the HITECH Act, legally charge more than a reasonable, cost-based fee for the medical records requested by Plaintiffs. Therefore, Plaintiffs have sued Defendants for "attempting to collect a charge, fee or expense incidental to the obligation unless such charge is legally chargeable to the consumer", as specifically prohibited by the TDCPA.  See, Tex. Fin. Code §392.303(a)(2).

And while it is clear that there is no direct, private federal cause of action under HIPAA (of which the HITECH Act is a part), no court has ever held that an illegal charge

under the HITECH Act cannot serve as the predicate for a state law claim under the TDCPA.  In fact, at least two courts have permitted plaintiffs to assert the illegality of charges under the HITECH Act via state law claims that are analogous to the TDCPA. See, *Webb*, 499 F.3d at 1082; see also, *Hunter v. Medstar Georgetown University Hospital*, 144 F.Supp.3d 28, 29 (D.D.C. 2015).

Plaintiffs' claims in this case should be distinguished from those that have held that the TDCPA does not provide a remedy for violations of federal guidelines governing mortgage loan modifications.  For instance, in *Kreway v. Countrywide Bank*, the court held that in a homestead foreclosure context the failure to follow federal guidelines for loan modifications did not provide the debtor with a private cause of action under the TDCPA.  *Kreway v. Countrywide Bank*, 2015 WL11622495 (W.D.Tex 2015).  *Kreway v. Countrywide Bank*, No. SA15CA332OLGHJB, 2015 WL 11622495, at *5 (W.D. Tex. Jul. 21, 2015).

*Kreway* and the cases it cites are distinguishable in at least two ways.  First, the federal loan modification guidelines at issue were not law.  *Brooks v. Ocwen Loan Servicing, LLC*, CIV.A. H-12-1410, 2012 WL 3069937, at *7 (S.D. Tex. July 27, 2012)("[T]he court has not found any authority for the for the proposition that a violation of the guidelines is a violation of the law."  Here, the Defendants' imposition of excessive charges for medical records is a clear violation of a federal statute that governs Defendants' conduct, and as such the charges in question are not "legally chargeable" per the plain meaning of the TDCPA.  See, Tex. Fin, Code §392.303(a)(2).

Additionally, in the loan modification cases referenced in *Kreway*, the plaintiffs' TDCPA claims did not implicate an attempt to "collect a charge, fee, or expense" that is not "legally chargeable," an act that is clearly prohibited by the TDCPA.  *Id.*  Rather, in

those cases the plaintiffs challenged foreclosure actions which were authorized under Texas law, were not prohibited by federal law, and were explicitly allowed by the TDCPA. *Kreway* at * 5 (citing Tex. Fin. Code § 392.301(a)(8) for the proposition that "the TDCPA does not prevent a debt collector from ... exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings").

Defendants fail to cite a single case holding that TDCPA claims cannot be brought to remedy the imposition of illegal charges such as those at issue in this case. Thus, the Court should apply the plain language of the statute and follow the lead of other courts that have allowed state law claims predicated on violations of the HITECH Act. See, e.g., *Wright v. Ford Motor Co.*, 508 F.3d 263, 269 (5th Cir.2007) (holding that the "plain language of the statute" should ordinarily control the interpretation of a Texas law).

**H. TDCPA Applies to Plaintiffs' Claims for Medical Record Overcharges**

The TDCPA applies to claims involving consumer debts, which are those that are incurred for "for personal, family, or household purposes." Tex. Fin. Code § 392.001. Texas cases have given broad meaning to the term "consumer debt," and have applied the TDCPA to a debt incurred in connection with a legal proceeding. See, e.g., *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.). Texas courts make the distinction between commercial debts (which are not subject to the TDCPA) and personal debts (which are subject to the TDCPA). See, *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 135 (5th Cir.1995).

Here, Plaintiffs sought their medical records as part of their pursuit of their own *personal* injury claims. See, Plaintiffs' First Amended Complaint at ¶ 38. There is no

contention that Plaintiffs' request for medical records in their pursuit of their own *personal* injury claims constituted a commercial activity by Plaintiffs.  Thus, the transaction in question involved *personal* debts of the Plaintiffs to which the TDCPA applies.  *Monroe*, 936 S.W.2d at 660.

But Defendants again claim that Plaintiffs are not liable for the inflated charges in question because Defendants unilaterally decided to send invoices for the medical records in question to Plaintiffs' attorney in response to Plaintiffs' requests for their medical records.  Such a disputed fact issue, which is not established by the pleadings or the documents referenced in the pleadings, is not properly before the court at the Motion to Dismiss stage of this litigation.  *Burns*, 139 F.3d at 517 (5th Cir. 1998).

And regardless, as set forth above, Plaintiffs are ultimately responsible for payment of the medical record charges at issue pursuant to their standard contingent fee contract with their attorney.  Thus, the unlawful charges in question are "owed" by Plaintiffs, and they are therefore entitled to sue under the TDCPA.  See, *Campbell v. Beneficial Fin. Co. of Dallas*, 616 S.W.2d 373, 375 (Tex. Civ. App.—Texarkana 1981, no writ).

Furthermore, because Plaintiffs are persons who are "adversely affected" by Defendants' excessive medical records charges, they are "entitled to maintain a cause of action under the [TDCPA]."  *Monroe*, 936 S.W.2d at 660; *Campbell*, 616 S.W.2d at 375.  And the "economic realities" of the transaction dictate that Plaintiffs are personally responsible for the charges in question and thus have incurred a consumer debt subject to the TDCPA.  See, e.g. *Edwards v. Your Credit Inc.*, 148 F.3d 427, 436 (5th Cir. 1998)(applying an economic realities test to a claim involving a consumer transaction).

As set forth above, the Defendants' imposition of excessive charges not authorized by the HITECH Act constitute violations of multiple provisions of the TDCPA.  See, Tex. Fin. Code § 392.303(a)(2), § 392.304(a)(8), § 392.304(a)(12), and § 392.304(a)(19).

### I.  Plaintiffs are Consumers under the DTPA

The DTPA applies to transactions in which a party seeks or acquires goods or services by purchase or lease, and the goods or services purchased or leased form the basis of the complaint. *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 14 (Tex. 1987).  The DTPA applies to all such transactions, subject only to limitations on the amount of assets a business consumer may have or the size of the transaction.  See, Tex. Bus. & Com. Code §§ 17.45(4), 17.49(f) and 17.49(g).

Defendants admit that they provided "services" in connection with the transactions at issue in this lawsuit.  See, Defendants' Motion to Dismiss at p. 13.  As set forth above, Plaintiff are the ultimate consumers of these services, and Defendants' claim to the contrary is a disputed fact issue that cannot be resolved via a Motion to Dismiss.  And as further set forth above, Defendants' imposition of inflated medical records charges violates the TDCPA and have caused harm to Plaintiffs, thereby making such conduct actionable under the DTPA.  See, Tex. Fin. Code § 392.404(a).

### J.  Defendants Would be Unjustly Enriched If They Are Permitted to Persist in Overcharging Plaintiffs and the Class for Medical Records

"A party may recover under the unjust enrichment theory when one person obtains a benefit from another by fraud, duress, or the taking of undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992).  As set forth above, Defendants have obtained an unlawful benefit from Plaintiffs by overcharging them for their medical records, in violation of the TDCPA.  Another court in the Western District of

Texas has found that claims for violations of the TDCPA via the imposition of illegal charges are factually interrelated with unjust enrichment claims and should be tried together. See, *Gomez v. Niemann & Heyer, L.L.P.*, 1:16-CV-119 RP, 2016 WL 8673848, at *2 (W.D. Tex. Aug. 8, 2016); see also, *Basham v. Smith*, 233 S.W.2d 297, 302 (1950)(claim for illegal overcharges could be made under the theory of unjust enrichment).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendant Nix Hospitals System, LLC and ScanSTAT, L.P.'s Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) be denied, or that alternatively such motion be converted to a Rule 56 motion for summary judgment, or that alternatively Plaintiffs be allowed to replead their claims, and that the Court grant them such further relief, in law or in equity, to which they may be entitled.

Respectfully submitted,

Riley & Riley, Attorneys at Law

By: */s/ Charles Riley*
    CHARLES RILEY
    State Bar No. 24039138
    320 Lexington Avenue
    San Antonio, Texas 78215
    Telephone: (210) 225-7236
    Facsimile: (210) 227-7907
    *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the **4th day of September, 2018** a true and correct copy of the above and foregoing has been served via CM/ECF electronic transmission on the following:

Edward F. Fernandes
Laura T. Wagner
HUNTON ANDREWS KURTH LLP
111 Congress Ave., Suite 510
Austin, Texas 78701
*Attorney for Defendants*
*Ciox heath, LLC and*
*Partners in Primary Care, PA*

Richard G. Foster
Raj Aujla
PORTER. ROGERS, DAHLMAN &
GORDON, PC
Trinity Plaza II
745 E. Mulberry, Suite 450
San Antonio, Texas 78212
*Attorney for Defendant*
*Partners in Primary Care, PA*

Charles A. Deacon
Alicia M. Grant
NORTON ROSE FULBRIGHT US, LLP
300 Convent Street, Suite 2100
San Antonio, TX 78205-3792
*Attorneys for Defendants*
*Nix Hospitals System, LLC and ScanSTAT, L.P.*

/s/ Charles Riley
CHARLES RILEY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **AMELIA RIOS, ROBERT GREEN AND SAYRA GREEN,** § | |
| **PLAINTIFFS,** § | |
| § | |
| **v.** § | **CIV. ACTION NO. 5:18-CV-00538-FB-ESC** |
| § | |
| **CIOX HEALTH, LLC, HEALTHPORT TECHNOLOGIES, LLC AND SCANSTAT, L.P.** § | |
| **DEFENDANTS.** § | |

**ORDER DENYING DEFENDANTS NIX HOSPITALS SYSTEM, LLC AND SCANSTAT, L.P.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

CAME ON to be heard Defendant Nix Hospitals System, LLC and ScanSTAT, L.P.'s Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. 27). After reviewing the Motion and the Response filed by Plaintiffs, the Court finds that such Motion should be DENIED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED Defendant Defendant Nix Hospitals Systems, LLC and ScanSTAT, L.P.'s Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED.

**IT IS SO ORDERED**.

SIGNED this _____ day of September 2018.

_____
HONORABLE ELIZABETH S. CHESTNEY
UNITED STATES MAGISTRATE JUDGE