IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMELIA RIOS, ROBERT GREEN, SAYRA GREEN, | § § § | |
| *Plaintiffs,* | § § § | |
| vs. | § § | |
| PARTNERS IN PRIMARY CARE, P.A., SCANSTAT. L.P., D/B/A SCANSTAT TECHNOLOGIES;  NIX HOSPITALS SYSTEM, LLC, DBA NIX MEDICAL CENTER AND DBA NIX HEALTHCARE SYSTEM, DBA NIX PHYSICIAN CARE CENTERS;  NORTH SHORE AGENCY INC.,  HEALTHPORT TECHNOLOGIES, LLC, DBA HEALTHPORT; AND  CIOX HEALTH, LLC, DBA HEALTHPORT AND DBA CIOX HEALTH, | § § § § § § § § § § § § § | SA-18-CV-00538-FB |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This report and recommendation concerns the following three motions to dismiss: Defendants Nix Hospitals System, LLC and ScanSTAT, L.P.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#27], Defendants Ciox Health LLC and Partners in Primary Care, P.A.'s Motion to Dismiss First Amended Complaint [#32], and Defendant North Shore Agency, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [#38].  This case was referred to the undersigned for all pretrial proceedings, and the undersigned has authority to enter a recommendation on Defendants' motions to dismiss pursuant to 28 U.S.C. § 636(b)(1)(B).

In resolving Defendants' motions, the undersigned has also considered the following responses, replies, and supplemental filings: Supplemental Exhibits to Nix Hospitals and ScanSTAT's Motion to Dismiss [#29], Response of Plaintiffs to Defendants Nix Hospitals and ScanSTAT's Motion to Dismiss [#33], Response of Plaintiff Amelia Rios to Defendants Ciox Health and Partners in Primary Care's Motion to Dismiss [#34], Defendants' Reply [#35], Defendants' Reply [#36], Response of Plaintiff Amelia Rios to Defendant North Shore Agency's Motion to Dismiss [#41], and Defendants' Reply [#42].

Also before the Court is Plaintiffs' Motion for Leave to Amend Complaint, which was filed on November 16, 2018 [#40]. According to this Court's Local Rules, Defendants' response to this motion was due within seven days of the motion's filing, on or before November 23, 2018. *See* Loc. R. CV-7(e) (responses to nondispositive motions due within seven days of motion's filing). To date, no Defendant has filed a response to the motion. Pursuant to Local Rule CV-7(e), if there is no response filed within the time period prescribed by the rules, the court may grant the motion as unopposed. The undersigned has authority to enter an order on Plaintiffs' nondispositive motion pursuant to 28 U.S.C. § 636(b)(1)(A). Accordingly, the Court will grant the motion to amend as unopposed and order the Clerk to docket Plaintiff's Second Amended Complaint, which is attached to Plaintiffs' motion [#40-1].

Although a motion to dismiss may be rendered moot by a supplemental or amended pleading, no party suggests that is the appropriate course here. Plaintiffs' Second Amended Complaint makes only minor additions to the factual allegations contained in its First Amended Complaint and does not add any additional claims. Moreover, Defendants' primary argument for dismissal focuses on alleged pleading defects related to issues of law not affected by Plaintiffs' amendments. *Cf. Maxim Integrated Prods., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. SA–14–

CV–1030–XR, 2015 WL 10990119, at *1 (W.D. Tex. Feb. 12, 2015) ("Especially given the substantive changes in the amended complaint, new causes of action, and more specific facts about the infringement that may go to the heart of the motion to dismiss, the Court finds State Farm's motion to dismiss is moot."). Accordingly, the undersigned will consider the arguments made in Defendants' motion to dismiss as they apply to the Second Amended Complaint, rather than dismissing as moot Defendants' motions and requiring Defendants to file new motions to dismiss. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 2002) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance.").

Having reviewed Plaintiffs' Second Amended Complaint [#40-1] in light of the arguments raised by Defendants' motion to dismiss, the undersigned is of the opinion the motions to dismiss should be denied without prejudice to rebriefing the issues discussed herein in a motion for summary judgment supported by a more complete evidentiary record.

## I. Procedural Background

This proposed class action arises under the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code §§ 392, *et seq.*, and the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Comm. Code § 17.41, *et seq.* Plaintiffs Amelia Rios, Robert Green, and Sayra Green filed this action on May 31, 2018 against two healthcare providers—Defendants Nix Hospitals System, LLC (hereinafter "Nix") and Partners in Primary Care, P.A. (hereinafter "Partners in Primary Care")—and the companies responsible for their recordkeeping, invoicing, and collection—

Defendants Healthport Technologies, LLC (hereinafter "Healthport"),[1] Ciox Health, LLC (hereinafter "Ciox"), ScanSTAT, L.P (hereinafter "ScanSTAT"), and North Shore Agency, Inc. (hereinafter "North Shore"). Plaintiffs allege that Defendants attempted to charge and collect an unauthorized fee for electronic copies of their medical records in violation of the fee restrictions contained in the Health Information Technology for Economic and Clinical Health Act (hereinafter "HITECH Act"), Pub. L. 111-5, Title XIII, 123 Stat. 264 (Feb. 17, 2009), and that these actions by Defendants violate the TDCA and DTPA. (Compl. [#1].)

Plaintiffs' Second Amended Complaint [#40-1], the live pleading in this case, alleges that Plaintiffs requested electronic copies of their medical records from Defendants Nix and Partners in Primary Care and directed these Defendants to send their records to their attorneys, in connection with personal-injury litigation. (Second Am. Compl. [#40-1] at ¶¶ 13, 17, 26, 31.) Plaintiffs claim that Defendants ScatSTAT and Healthport/Ciox responded to the requests on behalf of Nix and Partners in Primary Care by billing for the requested medical records; that the amount invoiced exceeded the charges allowed under the HITECH Act; and that Plaintiffs disputed the invoices on that basis. (*Id.* at ¶¶ 14–33.) Plaintiffs allege that their complaints were ignored and Defendants continued to send them invoices for the disputed charges and/or sent the invoices to Defendant North Shore for collection. (*Id.*) Plaintiffs contend that these acts violate the TDCA and DTPA because Defendants attempted to collect a debt unauthorized by the HITECH Act. (*Id.* at ¶¶ 36–40.)

Plaintiffs filed their lawsuit as a class action and propose a class action of (i) all persons (ii) who requested medical records from any Defendant and/or had their request for medical

---

[1] Plaintiffs state that Healthport changed its name to Ciox Health as part of a merger on November 19, 2016. (Second Am. Compl. [#40-1] at ¶ 21.) Accordingly, only Ciox, not Healthport, filed a motion to dismiss in this case.

records acted on by any Defendant (iii) and were charged or attempted to be charged a fee for such medical records that exceeds the costs allowed to be charged pursuant to 45 C.F.R. 164.524(c)(4).  (*Id.* at ¶ 47.)   Additionally, Plaintiff Amelia Rios brings this action on behalf of a class consisting of (i) all persons (ii) who disputed the amounts sought to be charged by Defendant North Shore (iv) whose complaint was not acknowledged by such Defendant as required by Texas Finance Code § 392.202.  (*Id.* at ¶ 48.)  Federal jurisdiction is premised on 28 U.S.C. § 1332(d), which confers jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and at least one member of the proposed class is a citizen of a state different from any defendant.  (*See id.* at ¶ 1.)

Plaintiffs seek actual damages as calculated as the difference between Defendants' actual cost to provide electronic copies of medical records in accordance with the HITECH ACT and the inflated amounts charged by Defendants as set forth in their pleadings, as well as additional damages for intentional conduct and reasonable and necessary attorneys' fees.  (*Id.* at ¶ 60.) Plaintiff Rios also seeks statutory damages under the Texas Finance Code for Defendant North Shore's failure to acknowledge disputes relating to the charged amounts.  (*Id.* at ¶ 61.) Additionally or alternative to monetary damages, Plaintiffs seek injunctive relief.  (*Id.* at ¶ 62.) Plaintiffs also plead their actual damages as recoverable under the doctrine of unjust enrichment. (*Id.* at ¶ 60.)

Collectively, Defendants' motions to dismiss seek dismissal of all of Plaintiffs' claims on the following grounds:  (1) Plaintiffs cannot bring claims premised upon alleged violations of the HITECH Act even through Texas consumer-protection statutes, as no private right of action exists under the HITECH Act; (2) even if Plaintiffs could sue under the TDCA or the DTPA for

violations HITECH Act's fee restrictions, Plaintiffs' claims would fail because Defendants did not violate the HITECH Act in their handling of Plaintiffs' record requests; (3) Plaintiffs lack standing to assert their claims because they did not suffer an injury-in-fact, as their attorneys were the ones invoiced for the electronic records provided; (4) Plaintiffs' TDCA and DTPA claims fail because the debt at issue does not arise from a consumer transaction and Plaintiffs' attorneys are not consumers for purposes of the TDCA or DTPA; (5) Plaintiffs' claim for unjust enrichment fails because there is no allegation of a benefit conferred on Defendants; (6) Plaintiffs cannot satisfy the prerequisites for class certification; and (7) Defendant Partners in Primary Care should be dismissed because there are no allegations that this Defendant engaged in any debt-collection conduct. The motions are now ripe for the Court's review.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)

(internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570. When the issue is a statute of limitations defense, the court may only order dismissal under Rule 12(b)(6) "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Because Nix and ScanSTAT [#27] and Ciox and Partners in Primary Care [#32] attached evidence to their motions to dismiss, Plaintiffs asks the Court to convert Defendants' motions into motions for summary judgment. The Court should decline to do so. Generally, in considering a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit recognizes a limited exception to this general rule where documents attached to a motion to dismiss are considered part of the pleadings and may be considered in reviewing the motion. *Id.* at 498–99. For the exception to apply, the documents must be (1) attached to a defendant's motion to dismiss, (2) referred to in the plaintiff's complaint, and (3) central to the plaintiff's claims. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Otherwise, "the motion must be treated as one for summary judgment [and] . . . [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

The exhibits attached to Defendants' motions to dismiss are copies of the requests for medical records at issue in this lawsuit [#27-2, #27-3, #27-4, #32-1] and supporting affidavits attesting to the authenticity of the documents [#27-1, #29]; copies of invoices to Plaintiffs' attorneys for the cost of the medical records [#27-6, #27-7, #27-8, #32-2]; and a check made payable to Nix from the Law Offices of Charles Riley, PC [#27-5]. All of these exhibits are referenced in Plaintiffs' pleadings and are central to Plaintiffs' claims. *See Lone Star Fund*, 594 F.3d at 387. Accordingly, the Court declines to convert Defendants' motions into motions for summary judgment, and the Court may consider the attached exhibits in ruling on the motions to dismiss.

### III. Factual Allegations Before the Court

The allegations in Plaintiffs' Second Amended Complaint state the following: all three Plaintiffs requested that Nix provide them with copies of their medical records in electronic format and that the records be sent to their attorney in connection with personal-injury litigation. (Second Am. Compl. [#40-1] at ¶¶ 13, 26, 31.) Plaintiff Amelia Rios also requested records from Partners in Primary Care and that these records be sent to her attorney. (*Id.* at ¶ 17.) ScanSTAT responded to the records request on behalf of Nix but indicated that Plaintiffs would be required to pay a charge that exceeded the allowable charge under the HITECH Act. (*Id.* at ¶¶ 14, 27, 32.) When Plaintiffs disputed the amount claimed, ScanSTAT never responded to the dispute and instead invoiced Plaintiffs repeatedly for the excessive amount. (*Id.* at ¶¶ 15, 28–29, 32–33.) Plaintiffs allege that Nix also directly sent Plaintiffs Amelia Rios and Sayra Green invoices seeking payment. (*Id.* at ¶¶ 16, 30.) Rios alleges she disputed the amount requested from Nix, and Nix never responded to the dispute; Ms. Green claims she paid the full amount in order to pursue her pending personal-injury claim. (*Id.* at ¶¶ 16, 30.)

The only Plaintiff who allegedly requested records from Partners in Primary Care was Rios. (*Id.* at ¶ 17.) Rios alleges that she requested records in electronic format from Partners in Primary Care and also asked the provider to send the records to her attorney. (*Id.*) Healthport allegedly sent Rios multiple invoices for amounts violating the HITECH Act's fee restrictions. (*Id.* at ¶ 18.) Rios claims she disputed the amounts invoiced, but Healthport never responded to the dispute and instead sent the invoices to Defendant North Shore for collection. (*Id.* at ¶ 19.) After Healthport changed its name to Ciox Health, Rios claims she continued to receive invoices from Ciox for the disputed amounts. (*Id.* at ¶ 21.) Rios alleges she also received collection notices from North Shore for these same amounts; she disputed these claims with North Shore; but North Shore never responded, instead sending her a "Medical Records Collection Alert." (*Id.* at ¶¶ 22–25.)

The evidence attached to Defendants' motions to dismiss, however, shows that Plaintiffs' attorneys at Riley & Riley, P.C. initiated the record requests by sending letters to Nix and Partners in Primary Care on behalf of Plaintiffs. (Ltr. re: Rios [#27-2] at 4–5; Ltr. re: S. Green [#27-3] at 4; Ltr. re: R. Green [#27-4] at 4; Ltr. re: Rios [#32-1] at 3.) These letters requested electronic copies of Plaintiffs' medical records "pursuant to the HITECH Act." (*Id.*) A HIPAA[2] Authorization for Use and Disclosure of Protected Health Information signed by Plaintiffs was attached to the letter, as well as letters from Plaintiffs addressed to the providers requesting the records and directing that they be sent to their attorneys. (Rios HIPAA Authorization and Ltr. [#27-2] at 9–10; S. Green HIPAA Authorization and Ltr. [#27-3] at 5–6; R. Green HIPAA

---

[2] HIPAA is the abbreviation for the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104–191, 110 Stat. 1936 (1996), which will be discussed in further detail *infra*.

Authorization and Ltr. [#27-4] at 5–6; Rios HIPAA Authorization and Ltr. [#32-1] at 4–5.) The letters signed by Rios state the following:

> Pursuant to the above cited United States Code provisions, I, the subject patient in the above request from my attorney, request that my entire chart and file of medical records, billings, HICFA's, CMS 1500's, be provided to me, through my above identified attorney, at his address, and that I be billed for this service under terms of the applicable law.

(Rios Ltr. [#27-2] at 6; Rios Ltr. [#32-1] at 5.) The letters signed by Sayra Green and Robert Green state the following:

> Pursuant to the HITECH Act . . . , I hereby request electronic copies of [patient's first name] complete medical records and billing records on a CD(s) which were generated during and as a result of his/her treatment in your facility, and you are hereby direct [sic] that the CD containing the requested records be mailed to [name and address and telephone number of the attorney]. This request is for records in electronic form only. . . . Please forward the Electronic Copies of my medical and billing records to my attorney, Charles Riley at 320 Lexington Avenue, San Antonio, Texas 782015; charlesriley@rileylawfirm.com.

(S. Green Ltr. [#27-3] at 6; R. Green Ltr. [#27-4] at 6.)[3]

The exhibits also include some of the invoices resulting from the records request. These invoices show that, in at least four instances, ScanSTAT and HealthPort/Ciox billed Plaintiffs' attorneys, not Plaintiffs themselves, for the records requests (*see* Invoices [#27-6, #27-7, #27-8, #32-2]), and Plaintiffs' attorneys remitted payment for the cost of the records provided for Sayra Green on November 28, 2016 (*See* Payment [#27-5]). The exhibits, however, do not include all of the invoices or communications from Nix, ScanSTAT and Healthport/Ciox referenced in Plaintiffs' Second Amended Complaint and none of the referenced communications from North Shore. Neither is there any evidence in the record regarding Plaintiffs' arrangements with their

---

[3] It appears that the letter is a form letter and Plaintiffs failed to insert their names and the names of their attorneys in some portions of the letter.

attorneys regarding how fees the firm incurred on their behalf would be handled.  Accordingly, the evidentiary record is incomplete at this time.

<h2 style="text-align:center;"><u>IV.  Analysis</u></h2>

Based on the current record and briefing before the Court, Defendants' motions to dismiss should be denied.  While Defendants are correct that no private right of action exists under HIPAA and the HITECH Act, Plaintiffs have not sued under these Acts; their case instead arises under the TDCA and DTPA.  At this stage of the litigation, Defendants have not persuaded the undersigned that Plaintiffs are precluded from asserting claims under these Texas consumer-protection statutes simply because their claims rely on allegations that the charges Defendants imposed and the debts they attempted to collect were unlawful because they violated the HITECH Act's fee restrictions.  Furthermore, Plaintiffs have standing to assert their claims because they allege they suffered an injury-in-fact, even if their attorneys were the ones invoiced for the costs associated with the copies of their medical records.  And Defendants have not established as a matter of law at this early stage in the litigation and on this limited evidentiary record that the HITECH Act does not govern Plaintiffs' claims, despite the fact that Plaintiffs' attorneys were the ones who initiated the requests for electronic copies on Plaintiffs' behalf.

Defendants have also failed to establish as a matter of law that Plaintiffs cannot plausibly prove that they or their attorneys were consumers engaged in a consumer transaction for purposes of their TDCA and DTPA claims or that Defendants were unjustly enriched by overcharging for Plaintiffs' electronic records.  Nor have Defendants advanced any argument that merits dismissal of Plaintiffs' class allegations at this early stage in the proceedings.

As to Defendant Partners in Primary Care, the undersigned agrees with Defendants that Plaintiffs' Second Amended Complaint does not contain any allegations that Partners in Primary

Care engaged in debt-collection activities. The undersigned will recommend, however, that if Plaintiffs believe Partners in Primary Care did indeed act as debt collector under governing law that Plaintiffs be permitted to amend their live pleading and supplement their allegations as to this Defendant only. Alternatively, Plaintiffs may amend their pleading to voluntarily dismiss their claims against Partners in Primary Care.

**A. The Court should reject Defendants' argument that Plaintiffs have failed to state a claim under the TDCA and DTPA as a matter of law.**

The Court should reject Defendants' argument that Plaintiffs' have failed to state a claim as a matter of law under the TDCA and DTPA. Defendants have not identified anything in the statutory or regulatory structure of the HITECH Act or Texas consumer-protection law that bars Plaintiffs from relying on the HITECH Act as a factual predicate to their claims under the TDCA and DTPA. Plaintiffs have sufficiently alleged their standing to assert their claims, and Defendants have not established that Plaintiffs' allegations fail to state a plausible claim that Defendants' actions violated the HITECH Act's fee restrictions.

      i.    <u>Defendants have not established as a matter of law that Plaintiffs cannot allege a claim under Texas consumer-protection law based on the HITECH Act.</u>

HIPAA (and the HITECH Act as part of its statutory and regulatory scheme) do not provide for a private right of action, as HIPAA by its terms limits enforcement of its provisions to the Secretary of the U.S. Department of Human Services ("HHS"). *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); 42 U.S.C. §§ 1320d-5, d-6. *See also* 65 Fed. Reg. 82462, 82601 (Dec. 28, 2000) ("Under HIPAA, individuals do not have a right to court action.") The appropriate redress for a HIPAA violation is therefore to file a written complaint with the Secretary of HHS, through the Office for Civil Rights, "which has the discretion to investigate the complaint and impose sanctions, both civil and criminal." *Brown v. Hill*, 174 F. Supp. 3d 66, 71 (D.D.C. 2016).

On this basis, courts have regularly dismissed actions attempting to assert a freestanding HIPAA claim. *See, e.g.*, *Johnson v. Metro. Transit Auth. of Harris Cty.*, No. CIV. A. H-10-2205, 2010 WL 3516603, at *1 (S.D. Tex. Sept. 3, 2010) (summarily dismissing direct HIPAA claim because there is no private right of action under the Act).

Defendants argue the Court should by extension dismiss Plaintiffs' claims here. Yet Plaintiffs do not sue Defendants under the HITECH Act itself in this lawsuit. Rather, Plaintiffs sue various medical providers and related entities under the TDCA and DTPA, arguing that Defendants attempted to collect unauthorized debts—debts that were unlawful because they exceeded the limits imposed by the HITECH Act.

Whether Plaintiffs may rely on Defendants' alleged violations of the HITECH Act as the factual basis for their claims under Texas consumer-protection law is a matter of first impression in this Circuit. Defendants' position is that the lack of a private right of action to bring a freestanding claim under the HITECH Act is an absolute bar on Plaintiffs' invocation of the HITECH Act as the factual predicate of their statutory claims under Texas law. Based on the current briefing, Defendants have failed to establish their position as a matter of law.

The TDCA provides a state law cause of action for wrongful debt collection. *See generally Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 840 (S.D. Tex. 2009). Texas law forbids a debt collector from using "unfair or unconscionable means" or "fraudulent, deceptive, or misleading representation" that employs certain listed practices. Tex. Fin. Code §§ 392.303(a), 392.304(a). Plaintiffs' Second Amended Complaint alleges that Defendants engaged in four practices prohibited by the TDCA: the prohibition in subsection (2) of Section 392.303(a) against "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the

agreement creating the obligation or legally chargeable to the consumer"; the prohibition in subsection (8) of Section 392.304(a) against "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding"; the prohibition in subsection (12) of Section 392.304(a) against "representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges"; and the prohibition in subsection (19) of Section 392.304(a) against "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* at §§ 392.303(a)(2), 392.304(a)(8), (12), (19). A violation of any of these TDCA provisions constitutes a deceptive trade practice under the DTPA. Tex. Fin. Code § 392.404.

For purposes of this analysis, the undersigned will focus on subsection (2) of Section 392.303 and subsection (12) of Section 392.304, which respectively prohibit collecting an unauthorized debt that is *not legally chargeable* to the consumer and representing that a debt may be increased by certain charges if a written contract *or statute* does not authorize the additional fee. Plaintiffs allege that the HITECH Act does not authorize the higher fees imposed for their medical records and therefore Defendants used unfair means and misrepresented the amount of the debt in billing and attempting to collect on various invoices. Defendants have not identified anything in the HITECH Act that prohibits Plaintiffs from alleging that the debt sought by Defendants is not "legally chargeable" and is unauthorized by "statute" due to the fee restrictions set forth in the HITECH Act.

In fact, courts interpreting the TDCA have in some instances been required to interpret other statutory provisions to determine whether or not the collection of a given debt is authorized by law. *See, e.g.*, *Bitterroot Holdings, LLC v. Bank of New York Mellon*, No. SA-14-CA-0804-

FB, 2015 WL 11661763, at *7 (W.D. Tex. Nov. 16, 2015) (denying motion to dismiss claims under TDCA where claim was premised on expiration of statute of limitations governing real property liens in Texas); *Manuel v. Merchants & Prof'l Credit Bureau, Inc.*, No. 1:18-CV-226-LY, 2019 WL 122060, at *4 (W.D. Tex. Jan. 7, 2019) (denying motion to dismiss parallel claim under Federal Debt Collection Practices Act where claim was premised on allegedly time-barred debt under Texas law). "Whether a debt is legally enforceable is a central fact about the character and legal status of that debt." *Manuel*, 2019 WL 122060, at *3 (quoting *McMahon v. LVNV Funding*, 744 F.3d 1010, 1021 (7th Cir. 2014)).

Defendants have not directed the Court to any authority in this Circuit or under Texas law that stands for the proposition that Plaintiffs' statutory claims fail as a matter of law. Instead, Plaintiffs point to cases dismissing freestanding HIPAA claims or common law claims, neither of which Plaintiffs are asserting here. For example, in one case cited by Defendants, *Faber v. CIOX Health, LLC d/b/a HealthPort Tech., LLC*, a federal district court in Tennessee, after first denying a motion to dismiss on the issue, granted summary judgment to the defendant and held that the plaintiff could not allege a claim of negligence *per se* based on overcharging for medical records in violation of the HITECH Act. 331 F. Supp. 3d 767, 779 (W.D. Tenn. July 24, 2018). But the court's reasoning in *Faber* rested on a principle of Tennessee law that the determination of whether a negligence *per se* claim is actionable under a certain statute is "analytically related" to whether an implied right of action exists under that statute. *Id.* at 778. The court therefore found that the fact that HIPAA does not provide for a private right of action foreclosed the plaintiff's negligence *per se* claim under Tennessee law. This holding provides no guidance as to the Texas statutory claims at issue here.

The same can be said for *Brush v. Miami Beach Healthcare Grp. Ltd.*, another case cited by Defendants, in which a Florida federal district court dismissed a breach of contract claim predicated on a HIPAA violation.  238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017).  In *Brush*, the plaintiff attempted to allege that defendants had a contractual duty to protect her private, personal data from security breaches based on provisions in the defendants' Notice of Privacy Practices.  *Id.* at 1367.  The court held that these provisions were not contractual in nature and merely informed patients of their rights under HIPAA; therefore, the breach of contract claim failed as a matter of law.  *Id.*  The court reasoned that a "[p]laintiff cannot manipulate the common law to state a private, statutory cause of action where none exists."  *Id.*  Without a valid contract governing the plaintiff's relationship with the defendant, the plaintiff in *Brush* was essentially attempting to allege a freestanding HIPAA claim.  *See id.* This is not the circumstance here, in which Plaintiffs allege a violation of various provisions of a Texas consumer-protection statute, statutes that provide Plaintiffs with an express right to judicial redress regarding an unauthorized debt.

Moreover, at least one federal circuit court of appeals has found that an individual may allege a claim under state consumer-protection law based on allegedly unlawful conduct in violating HIPAA's fee restrictions for medical records.[4]  In *Webb v. Smart Document Solutions*, the Ninth Circuit affirmed the dismissal of the plaintiff's unfair competition claim under California law premised on allegations the defendants had imposed fees that violated HIPAA, not because such a claim was foreclosed but because the facts of the case demonstrated that Defendants had complied with HIPAA's restrictions.  499 F.3d 1078, 1084–87 (9th Cir. 2007).

---

[4]*Webb* predated the HITECH Act but was based on the related limitation in HIPAA that a covered entity may impose only a "reasonable, cost-based fee" in fulfilling a request for medical records made by a patient or a patient's personal representative. *See* 45 C.F.R. § 164.524(c)(4).

To the contrary, the court reasoned that the California law was designed to remedy violations of other laws, both state and federal, and nothing precluded the plaintiff from basing his claim on alleged HIPAA violations. *Id.* at 1082–83. The *Webb* court's reasoning applies with equal force here: the fact that HIPAA and the HITECH Act does not give rise to a private right of action does not—on its own—foreclose Plaintiffs' ability to pursue available statutory causes of action under Texas consumer-protection law based on the theory that the debts at issue were unlawful and unauthorized because they violate the HITECH Act's fee restrictions. There may, of course, be other reasons the option is foreclosed—for instance a limitation that emanates from the state consumer-protection law itself. But Defendants have not convinced the undersigned to hold otherwise based on the current briefing before the Court.

  ii. <u>Plaintiffs have sufficiently established their standing to pursue their DTPA and TDCA claims at this early stage of the proceedings.</u>

Plaintiffs have sufficiently established their standing because they suffered an injury in fact even if their attorneys—acting as their agents—were billed improperly for copies of Plaintiffs' medical records. The "case or controversy" requirement of Article III to the Constitution mandates that in order to have standing to pursue a cause, a plaintiff must establish three things: (1) an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants contend that Plaintiffs have not suffered an injury in fact because the evidence attached to their motion to dismiss demonstrates that it was Plaintiffs' attorneys—not Plaintiffs—who were billed and, in some instances, paid for the costs associated with their medical records. (*See* Invoices [#27-6, #27-7, #27-8, #32-2]; Payment [#27-5].)

The Court has already held that it is entitled to consider these exhibits because they are referenced in Plaintiffs' pleadings. *See Collins*, 224 F.3d at 498 (discussed *supra* at section II). But even if it had not, the Court would be entitled to consider the evidence in the context of Defendants' factual attack on Plaintiffs' standing. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (differentiating facial and factual attacks on standing, the latter of which involves the submission of "affidavits, testimony, or other evidentiary materials"). Normally, to defeat a factual attack, a plaintiff "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof." *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). Here, however, Plaintiffs are not disputing the evidence provided by Defendants and concede that their attorneys' addresses were billed and listed on the invoices in question. (*See* Pls.' Resp. [#33] at 13.) Accordingly, Plaintiffs have not submitted any additional evidence for the Court's consideration. They simply argue that regardless of who was billed, Plaintiffs were the ones who initially sought the records and the charges incurred are ultimately their responsibility, as the attorneys were acting on their behalf. (*See id.*) The undersigned agrees.

Under Texas common law, "[t]he general rule is that the relationship of attorney and client is one of agency." *Tex. Employers Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961). "Under this rule, the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents." *Id.* Texas statutory law makes clear that "an attorney retained by the patient" is a legally authorized representative who may directly request a client's medical records on the client's behalf. Tex. Health & Safety Code § 241.151, § 241.152. The

Second Circuit Court of Appeals has held in a similar context that a plaintiff had standing to allege a claim complaining of overcharging for copies of their medical records in violation of New York state law capping such fees, despite the fact that the complaint alleged that the records had been paid for by the plaintiffs' attorneys. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57–58 (2d Cir. 2016). The court in *Carter* reasoned that ordinary principles of agency supported the allegation that the plaintiffs suffered an injury in fact as the principal on whose behalf the agent requested the records and made the associated payments. *Id.* The Court should reach the same conclusion here. Plaintiffs have standing to pursue their statutory claims because they allege they suffered an injury in fact when they were billed an improper amount—through their attorneys—for copies of their medical records.

Moreover, the TDCA provides a private right of action to any person who sustained "actual damages as a result of a violation of this chapter." Tex. Fin. Code § 392.403(a)(2). Texas courts have expressly recognized that the TDCA's statutory grant of standing "is not limited to debtors." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 472–73 (5th Cir. 2015). Rather, "[t]he Act provides for remedies for 'any person' adversely affected by prohibited conduct, not just parties to the consumer transaction." *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, pet. dism'd w.o.j.); *see also Campbell v. Beneficial Fin. Co. of Dallas*, 616 S.W.2d 373, 374 (Tex. Civ. App.—Texarkana 1981, no writ) (holding that "persons other than the debtor may maintain an action for violations of the Act"). This broad remedial scheme further supports Plaintiffs' position that it is immaterial who was actually billed for the fees as the debtor in question, so long as Plaintiffs suffered some tangible injury as a result of the transaction.

iii.  Defendants have not established as a matter of law that their handling of Plaintiffs' record requests did not violate the HITECH Act's fee restrictions.

Defendants also argue that Plaintiffs cannot demonstrate an essential element of their DTPA and TDCA claims—that Defendants engaged in any sort of unlawful or deceptive behaviors because Plaintiffs' pleadings and the evidence in the record establish that they did not violate the HITECH Act's requirements.  After considering the record currently before the Court, the undersigned cannot conclude that Defendants complied with the HITECH Act as a matter of law.

Plaintiffs' DTPA and TDCA claims are premised upon their allegation that Defendants violated the fee-restriction provisions of the HITECH Act.  Plaintiffs claim that Defendants charged, invoiced, and attempted to collect from Plaintiffs a sum greater than the actual cost to Defendants of responding to the request for medical records, which violates the Act.  Defendants argue that their actions did not violate HITECH because Plaintiffs' requests were initiated by their attorneys.  Plaintiffs respond that their requests are covered by the Act because the attorney correspondence at issue contains a letter signed by Plaintiffs requesting the records from their healthcare providers and designating their attorneys as the recipient of the protected health information.

In pertinent part, the HITECH Act provides:

In applying section 164.524 of title 45, Code of Federal Regulations, in the case that a covered entity uses or maintains an electronic health record with respect to protected health information of an individual—

(1) the individual shall have a right to obtain from such covered entity a copy of such information in an electronic format and, if the individual chooses, to direct the covered entity to transmit such copy directly to an entity or person designated by the individual, provided that any such choice is clear, conspicuous, and specific;

(2) if the individual makes a request to a business associate for access to, or a copy of, protected health information about the individual, or if an individual makes a request to a business associate to grant such access to, or transmit such copy directly to, a person or entity designated by the individual, a business associate may provide the individual with such access or copy, which may be in an electronic form, or grant or transmit such access or copy to such person or entity designated by the individual; and

(3) notwithstanding paragraph (c)(4) of such section, any fee that the covered entity may impose for providing such individual with a copy of such information (or a summary or explanation of such information) if such copy (or summary or explanation) is in an electronic form shall not be greater than the entity's labor costs in responding to the request for the copy (or summary or explanation).

42 U.S.C. § 17935(e) (emphasis added).

"The appropriate starting point when interpreting any statute is its plain meaning." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). "In determining a statute's plain meaning, we assume that, absent any contrary definition, Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning. . . . If the language is clear, then the inquiry should end." *Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1179 (5th Cir. 1996) (internal quotations omitted). Courts in the Fifth Circuit "interpret regulations in the same manner as statutes, looking first to the regulation's plain language. Where the language is unambiguous, [courts] do not look beyond the plain wording of the regulation to determine meaning." *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008). In contrast, where the language of the regulation or statute is susceptible to two reasonable and conflicting interpretations, a court may look beyond the text at issue and turn to legislative

history or administrative guidance. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 63 (2014); *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 492–93 (5th Cir. 2004).

The HITECH Act is part of a larger statutory and regulatory framework established by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104–191, 110 Stat. 1936 (1996). HIPAA was enacted to improve "the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." HIPAA § 261, Pub. L. No. 104-191, 110 Stat. 1936. HIPPAA directs the Secretary of HHS to develop regulations to achieve HIPAA's purpose. 42 U.S.C. § 1320d-2. One such rule established by HHS is the HIPAA Privacy Rule, which provides that "an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set . . . ." 45 C.F.R. § 164.524(a)(1); 67 Fed. Reg. 53182-01 (Aug. 14, 2002).

Subsection (c)(4) of HIPPA's Privacy Rule is the subsection referenced in the fee-restriction provision of the HITECH Act quoted above. This section limits the amount that may be charged when an individual requests a copy of protected health information to a "reasonable, cost-based fee" that includes only the cost of (i) labor for copying the protected health information requested by the individual, (ii) supplies for creating the paper copy or electronic media; (iii) postage; and (iv) preparing an explanation or summary of the protected health information, if requested. 45 C.F.R. § 164.524(c)(4). The HITECH Act expanded HIPAA to include individuals' rights to obtain electronic health records. Pub. L. No. 111-5, Title XIII, 123 Stat. 226 (2009). The HHS updated the Privacy Rule in 2013 to incorporate the HITECH Act's

additional protections.   78 Fed. Reg. 5566, 5566 (Jan. 25, 2013).   The updated Privacy Rule includes the following provision:

> If an individual's request for access directs the covered entity to transmit the copy of protected health information directly to another person designated by the individual, the covered entity must provide the copy to the person designated by the individual. The individual's request must be in writing, signed by the individual, and clearly identify the designated person and where to send the copy of protected health information.

45 C.F.R. § 164.524(c)(3)(ii); *see also* Fed. Reg. 5566, 5702.

Synthesizing these various provisions, the plain language of the HITECH Act and the Privacy Rule from which it stems collectively provide the following:  (1) an "individual" has a right to obtain a copy of protected health information about that individual from a covered entity; (2) the "individual" has a right to direct the covered entity to transmit the copy directly the individual or to an entity or person designated by the individual; (3) such request must be in writing, signed by the individual, and clearly identify the designated recipient of the protected health information; that upon request of such information; (4) the covered entity may impose only a reasonable, cost-based fee; and (5) if the copy is in electronic form the cost imposed cannot be greater than the entity's labor costs in responding to the request for the copy.   42 U.S.C. § 17935(e); 45 C.F.R. § 164.524.   HIPAA defines the term "individual" as "the person who is the subject of the protected health information."  45 C.F.R. § 160.103.

When read against the facts of this case, the undersigned agrees with Defendants that the HITECH Act is ambiguous, in that it is subject to more than one reasonable interpretation.  *See Scialabba*, 573 U.S. at 63; *Goswami*,  377 F.3d at 492–93.   It is unclear whether the Act permits a designated third party to initiate communications with medical providers on the patient's behalf or whether the intent behind the Act was to require that a patient always initiate such

communications.  Due to this ambiguity, the Court turns to administrative guidance for assistance in interpreting its meaning.

HHS guidance establishes that an individual or an individual's "personal representative," must be the person requesting the protected health information for the HITECH Act's protections to apply.  In response to a comment regarding the original Privacy Act regarding requests for records by attorneys or other entities with the individual's authorization for disclosure of private health information, the HHS clarified that Section 164.524(c)(4) "limits only the fees that may be charged to *individuals*, or to their *personal representatives* in accordance with § 164.502(g), when the request is to obtain a copy of protected health information about the individual in accordance with the right of access."  67 Fed. Reg. 53182, 53254 (Aug. 14, 2002) (emphasis added).  HIPAA defines "personal representative" as a person who "under applicable law . . . has authority to act on behalf of an individual who is an adult or an emancipated minor in making decisions related to health care."  45 C.F.R. § 164.502(g)(1), (2).  Another HHS final rule regarding the privacy of individually identifiable health information indicates that HSS specifically considered adding a designated "legal representative" to HIPAA's definition of "individual" and instead chose to include a separate and more limited definition of "personal representative."  65 Fed. Reg. 82462, 82492 (Dec. 28, 2000).  These regulations therefore suggest that any request by an attorney for records would not fall under the HITECH Act's protections.

However, in guidance published on the HHS website, the HHS explains that the fee limitations in the HITECH Act **do** apply where a third party is forwarding a records request for one of its clients, in which the client designates the party as the recipient of the records.  HHS

distinguishes this factual scenario from a request made by a third party on its own behalf, relying only on a patient's HIPAA authorization form. In the words of the HHS,

> The fee limits apply when an individual directs a covered entity to send the PHI to the third party. Under the HIPAA Privacy Rule, a covered entity is prohibited from charging an individual who has requested a copy of her PHI more than a reasonable, cost-based fee for the copy that covers only certain labor, supply, and postage costs that may apply in fulfilling the request. See 45 CFR 164.524(c)(4). This limitation applies regardless of whether the individual has requested that the copy of PHI be sent to herself, or has directed that the covered entity send the copy directly to a third party designated by the individual (and it doesn't matter who the third party is). To direct a copy to a third party, the individual's access request must be in writing, signed by the individual, and clearly identify the designated person or entity and where to send the PHI. See 45 CFR 164.524(c)(3)(ii). Thus, written access requests by individuals to have a copy of their PHI sent to a third party that include these minimal elements are subject to the same fee limitations in the Privacy Rule that apply to requests by individuals to have a copy of their PHI sent to themselves. **This is true regardless of whether the access request was submitted to the covered entity by the individual directly or forwarded to the covered entity by a third party on behalf and at the direction of the individual (such as by an app being used by the individual).** Further, these same limitations apply when the individual's personal representative, rather than the individual herself, has made the request to send a copy of the individual's PHI to a third party.
>
> In contrast, third parties often will directly request PHI from a covered entity and submit a written HIPAA authorization from the individual (or rely on another permission in the Privacy Rule) for that disclosure. **Where the third party is initiating a request for PHI on its own behalf, with the individual's HIPAA authorization (or pursuant to another permissible disclosure provision in the Privacy Rule), the access fee limitations do not apply. However, as described above, where the third party is forwarding - on behalf and at the direction of the individual - the individual's access request for a covered entity to direct a copy of the individual's PHI to the third party, the fee limitations apply.**

*See Individual's Rights under HIPAA to Access their Health Information 45 C.F.R. § 164.524*,

U.S. Dep't of Health & Human Services (Feb. 25, 2016), available at

https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html (last visited Feb. 3, 2019) (emphasis added).

Applying this guidance to the facts of this case, the undersigned finds that Plaintiff has alleged facts that could establish Defendants' non-compliance with the HITECH Act. The fact that the records request was initiated by Plaintiffs' attorney does not in itself preclude a finding that Defendants' actions violated the HITECH Act. Because the request was accompanied by letters authored by Plaintiffs that requested their medical records and directed that the records be sent directly to their attorneys, the fee-restriction provisions should apply. *See id.* These letters are in writing, signed by Plaintiffs, and clearly identify Plaintiffs' attorneys at Riley & Riley as the designated recipients of the protected health information. *See* 45 C.F.R. § 164.524(c)(3)(ii).

These letters makes this case distinguishable from the only other federal district court opinion addressing attorney requests for electronic medical records under the HITECH Act, *Bocage v. Acton Corp.*, No. 2:17-CV-01201-RDP, 2018 WL 905351, at *1 (N.D. Ala. Feb. 15, 2018).[5] In that case, all of the plaintiffs' state-law tort claims were also premised on the request for medical records by an attorney for the plaintiffs. But, unlike here, the attorney requests were only accompanied by a general HIPAA-Compliant PHI Release Form authorizing disclosure of protected health information. *See Bocage*, 2:17-CV-01201-RDP, at Doc. 37-1.[6] There were no

---

[5] As discussed *supra*, the Ninth Circuit Court of Appeals previously addressed the application of the fee restrictions in HIPAA's Privacy Rule to attorney requests for medical records on behalf of a client in an opinion predating the HITECH Act. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078 (2007). This case held that HIPAA's definition of "individual" did not include a patient's attorney or other agents, and therefore an attorney request on behalf of a patient was not subject to the "reasonable, cost-based fee" enjoyed by patients themselves. *Id.* at 1084–86.

[6] The Court takes judicial notice of the filings in *Bocage*, 2:17-CV-01201-RDP, which are part of the public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)

written letters signed by the patients requesting the records and clearly designating their attorney as the recipient of the electronic records. *See id.* The plaintiffs merely authorized the general disclosure of their private health information to their attorneys, *see Bocage*, 2018 WL 905351, at *5, which the HHS has plainly indicated is insufficient to satisfy the HITECH Act's requirements. On these facts, the Alabama District Court held that "a legal representative who requests an individual's protected health information (and is not a personal representative of the individual) is not entitled the fee limitations under HIPAA by 45 C.F.R. § 164.524(c)(4)." *Id.* at *6. The undersigned agrees with the Northern District of Alabama's interpretation of the statute and reasoning in that context but finds the instant case to be factually distinguishable. The undersigned declines to endorse the position of Defendants that an attorney, acting on behalf of a client/patient, cannot forward a records request signed by the patient and author a cover letter explaining the reasons for the correspondence and reiterating the patient's request without falling outside of the HITECH Act's fee restrictions. On the briefing currently before the Court, the Court should reject this argument.

iv. <u>Defendants have not met their burden to prove that Plaintiffs failed to allege a plausible claim that they and their attorney were consumers engaged in a consumer transaction for purposes of the TDCA and DTPA.</u>

Defendants also contend that Plaintiffs have failed to state a claim under the TDCA because the debt at issue did not arise from a consumer transaction and plaintiffs' attorneys are not consumers as defined by the DTPA. A threshold requirement for any claim under the TDCA is that the debt constitutes a "consumer debt," and the DTPA similarly provides that only "a consumer" may bring an action for a variety of deceptive business practices listed under the Act, Tex. Bus. & Comm. Code § 17.50(a).

---

(citation omitted) (courts may take judicial notice of matters of public record in ruling on motion to dismiss).

The TDCA defines "consumer debt" as an "obligation . . . primarily for personal, family, or household purposes and arising from a transaction or alleged transaction."  Tex. Fin. Code § 392.001(2).  The DTPA defines "consumer" as an individual or entity "who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Comm. Code § 17.45(4).  Another requirement for a claim under the DTPA recognized by the Texas Supreme Court is that the goods or services purchased or leased must form the basis of the complaint.  *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987).

Defendants have not provided the Court with any authority supporting their position that the fact that Plaintiffs and their attorneys requested medical records for use in personal-injury litigation renders Plaintiffs and their attorneys non-consumers or the debt not a consumer debt. Plaintiffs have adequately pleaded that they requested a service from their medical providers— the provision of electronic copies of their medical records—for use in a lawsuit related to a personal injury and this transaction forms the basis of the complaint before the Court.  There is no allegation that the debt involved a commercial or business transaction, and Defendants have failed to satisfy their burden to demonstrate that Plaintiffs' claims fail as a matter of law on this basis.

The Court should also reject the argument that Rios fails to plead a claim against North Shore for inadequately responding to a written dispute challenging the collection efforts of North Shore pursuant to Tex. Fin. Code § 392.202(a).  Plaintiffs' Second Amended Complaint alleges that North Shore sent invoices to Rios in an attempt to collect the debt as a third-party debt collector, never responded to various disputes regarding the underlying debts and collection efforts, and instead continued to pursue payment on the debt by sending Rios a "Medical Records Collection Alert."  (Second Am. Compl. [#40-1] at ¶¶ 19–25.)  Section 392.202(a) of

the Texas Finance Code establishes rules by which a debt collector must investigate a disputed debt and report the results of the investigation to the consumer, but these rules only apply under certain circumstances—when the debt is in fact being collected and the debt collector is notified of the dispute in writing. Whether or not Rios complied with the requirements under the Finance Code for disputing a debt and whether or not North Shore properly responded to the dispute are fact issues that will be resolved on summary judgment or at trial. At this stage in the proceedings, the Court accepts as true Plaintiffs' allegations that North Shore ignored the dispute and continued to pursue payment on the debt. *See Martin K. Eby Const. Co.*, 369 F.3d at 467.

**B.      Plaintiffs may plead actual damages based on a theory of unjust enrichment.**

Defendants ask the Court to dismiss Plaintiffs' claim of unjust enrichment, but Plaintiffs do not allege a cause of action for unjust enrichment. Rather, they allege actual damages based on the doctrine of unjust enrichment. (Second Am. Compl. [#40-1] at ¶ 60.) "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Plaintiffs have pleaded that Defendants obtained an undeserved benefit by billing excessive amounts for the provision of electronic records, and that Defendants in some circumstances received these overpayments. Accordingly, at this stage in the proceedings, Plaintiffs may seek damages based on a theory of unjust enrichment.

**C.      Defendants are not entitled to dismissal of Plaintiffs' class allegations.**

Defendants are not entitled to dismissal of Plaintiffs' class allegations. The only asserted basis for dismissal of Plaintiffs' class allegations is Defendants' argument that Plaintiffs' individual claims fail as a matter of law and therefore cannot form the factual basis of a class action. For the reasons previously stated, the Court should reject Defendants' arguments with

respect to Plaintiffs' individual claims under the DTPA and TDCA and by extension with respect to Plaintiffs' class claims. Defendants do not challenge the class allegations on the basis that the class is not ascertainable or make any specific arguments with respect to the four requirements for class certification. *See* Fed. R. Civ. P. 23(a); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). Nothing in this section of the report precludes any party from asserting any argument in the context of a motion to certify a class under Rule 23. Accordingly, at this stage of the proceedings, Plaintiffs' class allegations should survive dismissal.

**D.     The Court should permit Plaintiffs to supplement their allegations against Partners in Primary Care or to voluntarily dismiss these claims.**

Partners in Primary Care is, as previously noted, one of the medical providers that originally received a request for electronic copies of medical records. Defendants contend that the Court should dismiss Partners in Primary Care from this lawsuit because Plaintiffs do not allege any actionable debt-collection conduct by this Defendant under the TDCA or DTPA. The undersigned agrees. The entirety of the allegations in Plaintiffs' Second Amended Complaint against Partners in Primary Care is that Rios requested that this provider send electronic copies of her medical records to her attorney. (Second Am. Compl. [#40-1] at ¶¶ 17–25.) Plaintiffs allege that all invoicing and collection activities were performed by Healthport/Ciox and North Shore. (*See id.*)

A "debt collector" under the TDCA is defined as "a person who directly or indirectly engages in debt collection." Tex. Fin. Code § 392.001(6). "[A] debt collector does not include the consumer's creditors" unless the creditor is attempting to collect its own debt. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). Plaintiffs attempt to argue that Partners in Primary Care should remain in this lawsuit because the HITECH Act defines it as a "covered entity" to whom the HITECH Act applies. *See* 45 CFR 164.524(c)(4); 45 CFR § 160.103

(defining "covered entity" as the original healthcare provider that generates medical records). However, Plaintiffs' claims do not arise under the HITECH Act. This is a lawsuit alleging violations of the TDCA (and the DTPA based on a violation of the TDCA), which may only be alleged against a "debt collector." *See McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (listing essential elements of TDCA claim as including the defendant's identity as a debt collector). Accordingly, without additional allegations of debt-collection activity it appears Plaintiffs' claims against Partners in Primary Care should be dismissed. As an alternative to dismissing Partners in Primary Care from this lawsuit, the Court should allow Plaintiffs to either supplement their allegations as to this Defendant only or voluntarily dismiss these claims. Plaintiffs should also address any additional authority supporting their position that Partners in Primary Care, based on the allegations contained in Plaintiffs' live pleading, is indeed a debt collector under Texas law in any objections they file to this report and recommendation.

## V. Conclusion, Order, and Recommendation

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint [#40] is **GRANTED** and the Clerk is directed to docket Plaintiffs' proposed Second Amended Complaint [#40-1].

Having considered Plaintiff's Second Complaint in light of the arguments raised in Defendants' motions to dismiss, the undersigned **recommends** that Defendants Nix Hospitals System, LLC and ScanSTAT, L.P.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#27], Defendants Ciox Health LLC and Partners in Primary Care, P.A.'s Motion to Dismiss First Amended Complaint [#32], and Defendant North Shore Agency, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [#38] be **DENIED without prejudice** to raising

any of the arguments asserted in the motions to dismiss in a motion for summary judgment supported by a complete evidentiary record prior to any ruling on class certification.

The undersigned further **recommends** that the District Court permit Plaintiffs to supplement their factual allegations against Defendant Partners in Primary Care or voluntarily dismiss these claims.

## VI.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of February, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE