IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMELIA RIOS, ROBERT GREEN, and SAYRA GREEN, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CASE NO. 5:18-CV-00538-ESC |
| CIOX HEALTH, LLC, HEALTHPORT TECHNOLOGIES, LLC, SCANSTAT, L.P., NORTH SHORE AGENCY, INC., NIX HOSTPITALS SYSTEM, LLC, and PARTNERS IN PRIMARY CARE, P.A., | § § § § § § § | Jury Trial Demanded |
| Defendants. | § | |

## PLAINTIFFS' FIFTH AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE**:

Come now, Amelia Rios, Robert Green and Sayra Green, Plaintiffs herein, by and through their attorneys, who pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure timely file this their Fifth Amended Complaint as a matter of course, and would respectfully show the Court the following:

### JURISDICTION

1.     This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(d), which confers jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

## VENUE

2.      Venue is proper in the Western District of Texas, pursuant to 28 U.S.C. §1337, based upon the fact that Plaintiffs are citizens of the State of Texas and reside in Bexar County which is located in the Western District of Texas.  The transactions and occurrences which give rise to this action occurred in Bexar County, Texas.

## PARTIES

3.      Plaintiff Amelia Rios (hereinafter referred to as "Ms. Rios") is an individual residing within the Western District of Texas.  Plaintiff is a consumer as that term is defined by the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. § 392.001 *et seq*.

4.      Plaintiff Sayra Green (hereinafter referred to as "Mrs. Green") is an individual residing within the Western District of Texas.  Plaintiff is a consumer as that term is defined by the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. § 392.001 *et seq*.

5.      Plaintiff Robert Green (hereinafter referred to as "Mr. Green") is an individual residing within the Western District of Texas.  Plaintiff is a consumer as that term is defined by the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. § 392.001 *et seq*.

6.      Defendant, Ciox Health, LLC d/b/a Healthport and also d/b/a Ciox Health (hereinafter referred to as "Ciox") is a limited liability company organized pursuant to the laws of Georgia with its principal place of business in Georgia.

7.      Defendant, Healthport Technologies, LLC d/b/a Healthport (hereinafter referred to as "Healthport") is a limited liability company organized pursuant to the laws of Georgia with its principal place of business in Georgia.

8.      Defendant, ScanStat, L.P. /b/a ScanSTAT Technologies (hereinafter referred to as "ScanSTAT") is a limited partnership organized pursuant to the laws of Georgia with its principal

place of business in Georgia.

9.      Defendant North Shore Agency, Inc. d/b/a North Shore Agency, A National Collection Agency (hereinafter referred to as "North Shore") is a corporation organized pursuant to the laws of New York with its principal place of business in New York.

10.      Defendant, Nix Hospitals System, LLC d/b/a Nix Medical Center and also d/b/a Nix Healthcare System and also d/b/a Nix Physician Care Centers - TX (hereinafter referred to as "the Nix") is a limited liability company organized pursuant to the laws of Texas with its principal place of business in Texas.

11.      Defendant, Partners in Primary Care, P.A., (hereinafter referred to as "Partners in Primary Care") is a professional association organized pursuant to the laws of Texas with its principal place of business in Texas.

12.      Defendant, Methodist Healthcare System of San Antonio, Ltd., L.L.P. d/b/a Methodist Ambulatory Surgery Center, (hereinafter, referred to as "Methodist") is a limited partnership organized pursuant to the laws of Texas with its principal place of business in Texas.

13.      Defendant, Chase Receivables, Inc. ("hereinafter, referred to as "Chase Receivables") is a corporation organized pursuant to the laws of California with its principal place of business in New Jersey.

## FACTS

14.      The HITECH Act, 42 U.S.C. §17935(e), limits the amounts that can be charged by a medical provider for copies of medical records that are requested by a patient.  Pursuant to the HITECH Act and its implementing regulations, healthcare providers may only charge a *reasonable* fee for these records that *only* includes their actual cost of: (1) labor for providing the requested records in electronic form; (2) supplies for creating the electronic media (e.g., CD or USB drive)

if the patient requests that the electronic copy be provided on portable media; (3) postage, when the patient requests that the copy, or the summary or explanation, be mailed; and (4) preparation of an explanation or summary of the records, if agreed to by the patient.  See 45 CFR 164.524(c)(4). These limitations apply when the patient requests that electronic copies of medical records be sent to a designated third party.  See 45 CFR 164.524(c)(3)(ii).

**A.  Ms. Rios' Request for Electronic Medical Records from the Nix**

15.     On or about May 26, 2016, Plaintiff Amelia Rios requested that the Nix provide her with a copy of her medical records in electronic format.  Ms. Rios requested that the Nix send these medical records to her attorney, in connection with Ms. Rios' claim arising out of personal injuries sustained in a car wreck that occurred on October 23, 2015.

16.     On or about May 31, 2016, Defendant ScanSTAT responded to Ms. Rios' request for electronic medical records on behalf of the Nix.  In connection with such response, ScanSTAT indicated that Ms. Rios would be required to pay $47.04 for the requested medical records.  Ms. Rios disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act.

17.     On or about June 1, 2016, ScanSTAT sent Ms. Rios the requested medical records in electronic format as requested but increased its demand for payment to $84.17.  Ms. Rios again disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act.

18.     On or about June 8, 2016 and again on or about June 13, 2016, the Nix sent Ms. Rios a bill seeking to charge $30 for two pages of billing records responsive to her May 26, 2016 request for electronic medical records.  Ms. Rios disputed the amount sought to be charged for such electronic medical records, because it exceeded the charges allowed under the HITECH Act.

The Nix never responded to this dispute, and never provided the requested billing records to Ms. Rios.

### B. Ms. Rios' Request for Electronic Medical Records from Partners in Primary Care

19.    On or about May 27, 2016, Plaintiff Amelia Rios requested that Partners in Primary Care provide her with a copy of her medical records in electronic format.  Ms. Rios requested that Partners in Primary Care send these medical records to her attorney, in connection with Ms. Rios' claim arising out of personal injuries sustained in a car wreck that occurred on October 23, 2015. Ms. Rios followed up on this initial request on June 23, 2016, pointing out that she had not received records relating to one of her visits to Partners in Primary Care.

20.    On or about June 15, 2016 and June 17, 2016, and July 9, 2016, Defendant Healthport, acting for and as an agent on behalf of Partners in Primary Care, sent Ms. Rios three separate invoices, one for $26.57, one for $25.68, and one for $40.68, all of which corresponded to Ms. Rios' request for electronic medical records directed to Partners in Primary Care.  All of these invoices referenced a Customer # 1534849.  Included in the charges in the invoices were charges of $15.00 for a "certification fee," for a certification of Ms. Rios' medical records that she neither requested nor received.  Defendant Healthport sent those invoices to Ms. Rios in response to her request to Partners in Primary Care for electronic medical records, obviously acting as an agent for Partners in Primary Care.

21.    Partners in Primary Care engaged in debt collection for the purposes of § 392.001(6) of the Texas Finance Code because, either directly or indirectly, Partners in Primary Care engaged in collection of a debt from Ms. Rios.  If Partners in Primary Care had responded to Ms. Rios' May 27, 2016, request for her medical records itself with the three invoices as Healthport

did acting on behalf of Partners in Primary Care, then Partners in Primary Care would have been an original creditor acting impermissibly in collecting a debt unlawfully under the Texas Finance Code.  In addition, and/or alternatively, Partners in Primary Care either directly or indirectly solicited Healthport to collect the claimed debts for Partners in Primary Care by sending the invoices in violation of Section 392.001(5) of the Texas Finance Code in receipt to Ms. Rios' request for electronic medical records.  In addition, and/or alternatively, Partners in Primary Care is vicariously liable for the conduct of Healthport in attempting to collect the charges for the records Ms. Rios requested.  With Healthport acting as its agent, Partners in Primary Care is vicariously liable for the conduct of Healthport.

22.     Ms. Rios disputed the amounts claimed, because they exceeded the charges allowed under the HITECH Act.  Neither Healthport nor Partners in Primary Care ever responded to this dispute, and instead sent the invoices to Defendant North Shore for collection.

23.     Furthermore, Healthport, acting for and as an agent on behalf of Partners in Primary Care, wrongfully billed Ms. Rios three times for the same requested medical records, thereby further inflating the charges for such records far beyond those permitted by the HITECH Act. Alternatively, although state laws and regulations pertaining to medical record requests are preempted by the HITECH Act, Healthport, acting for and as an agent on behalf of Partners in Primary Care, in billing Ms. Rios three times for the same requested medical records caused Ms. Rios to be billed amounts for those records that exceeded even the limits on medical record charges imposed by state laws and regulations.  The conduct of Partners in Primary Care and/or Healthport in billing Ms. Rios three times for the same requested medical records caused confusion as to the amount claimed to be owed for such records.

24.     Beginning on or about November 19, 2016, on information and belief, Healthport changed its name to Ciox Health as part of a prior merger of Healthport, IOD Inc., Care Communications Inc. and ECS.  Thereafter, Ms. Rios continued to receive invoices from Ciox by which it sought to charge a total of $92.93 for the electronic medical records that she had requested from Partners in Primary Care.

25.     On or about August 8, 2017, Defendant North Shore sent Ms. Rios copies of two Healthport invoices by which it sought to charge Ms. Rios $26.57 and $25.68 for the electronic medical records she had requested from Partners in Primary Care.  North Shore directed Ms. Rios to pay these charges directly to North Shore and indicated that this alleged debt was past due, thus making North Shore a third-party debt collector pursuant to the Texas Finance Code.

26.     Ms. Rios immediately disputed the amounts claimed, because they exceeded the charges allowed under the HITECH Act.  In her dispute, Ms. Rios did not reference any invoice numbers but rather referenced the Customer # 1534849 that had been assigned to all of the Healthport invoices she received relating to her request for medical records from Partners in Primary Care.

27.     In her dispute, Ms. Rios made clear that she had requested her medical records from Partners in Primary Care pursuant to the HITECH Act, and informed North Shore that she disputed any attempt to charge per page rates for such medical records rather than the actual costs of producing such medical records in electronic form as allowed by the HITECH Act.

28.     North Shore never responded to this dispute, and instead sent Ms. Rios a "Medical Records Collection Alert" by which it continued to attempt to charge Ms. Rios $40.68 for the electronic medical records that she had requested from Partners in Primary Care.

**C.  Mrs. Green's Request for Electronic Medical Records from the Nix**

29.     On or about November 18, 2016, Plaintiff Sayra Green requested that the Nix provide her with a copy of her medical records in electronic format.  Mrs. Green requested that the Nix send these medical records to her attorney, in connection with Mrs. Green's claim arising out of personal injuries sustained in a car wreck that occurred on April 11, 2014.

30.     On or about November 21, 2016, Defendant ScanSTAT responded to Mrs. Green's request for electronic medical records on behalf of the Nix.  In connection with such response, ScanSTAT indicated that Mrs. Green would be required to pay $91.28 for the requested electronic medical records.  Included in the charge of $91.28 was $6.00 for a notary fee or charge.

31.     Mrs. Green disputed the amount claimed, because it exceeded the charges allowed under the HITECH Act.  ScanSTAT never responded to this dispute, and instead it continued to send Mrs. Green invoices by which it sought to charge a $91.28 for the electronic medical records that she had requested from the Nix.

32.     On or about January 6, 2017, ScanSTAT sent Mrs. Green an invoice for $47.50 along with Mrs. Green's initial request for electronic medical records from the Nix.  Included in the charge of $47.50 was $15.00 for a certification fee and $6.00 for a notary fee or charge.   This invoice for $47.50 purported to relate to medical records from the Nix d/b/a Nix Physician Care Centers – TX.  Thereafter, ScanSTAT sent Mrs. Green invoices for both the initial $91.28 charge for Mrs. Green's medical records from the Nix and the subsequent $47.50 charge for Mrs. Green's medical records from the Nix, bringing the total amount charged by ScanSTAT for Mrs. Green's medical records from the Nix to $138.78.

33.     On or about November 23, 2016, the Nix sent Mrs. Green an invoice seeking to charge her $36.00 for two pages of billing records responsive to her November 18, 2016 request

for electronic medical records from the Nix.  Included in the charge of $36.00 was $6.00 for a notary fee or charge.    Mrs. Green paid this amount to the Nix so as to obtain the billing records she needed in order to pursue her pending claim arising out of a car wreck.

**D.  Mr. Green's Request for Electronic Medical Records from the Nix**

34.    On or about September 1, 2017, Plaintiff Robert Green requested that the Nix provide him with a copy of his medical records in electronic format.  Mr. Green requested that the Nix send these medical records to his attorney, in connection with Mr. Green's claim arising out of personal injuries sustained in a slip and fall incident that occurred on January 2, 2016.

35.    On or about October 3, 2017, Defendant ScanSTAT responded to Mr. Green's request for electronic medical records on behalf of the Nix.  In connection with such response, ScanSTAT provided an invoice stating that Mr. Green would be required to pay $92.30 for the requested medical records.  Included in the charge of $92.30 were charges for $15.00 for a "certification fee" and $6.00 for a notary fee or charge.

36.    Mr. Green disputed the amount claimed, because it exceeded the charges allowed under the HITECH Act.  ScanSTAT never responded to this dispute, and instead ScanSTAT continued to send Mr. Green invoices by which it sought to charge him $92.30 for the electronic medical records that he had requested from the Nix.

37.    On or about September 1, 2017, the Nix sent Mr. Green an invoice seeking to charge him $38 for fourteen pages of billing records responsive to his September 1, 2017 request for electronic medical records from the Nix.  Included in the charge of $38.00 was $6.00 for a notary fee or charge.  Mr. Green paid this amount to the Nix so as to obtain the billing records he needed in order to pursue his pending claim arising out of a slip and fall incident.

**E.  Mr. Green's Request for Electronic Medical Records from Methodist**

38.      On or about October 4, 2017, Plaintiff Robert Green requested that Methodist provide him with a copy of his medical records in electronic format.  This request was ignored, so on or about January 10, 2018, Mr. Green again requested that Methodist provide him with a copy of his medical records in electronic format.  Mr. Green requested that Methodist send these medical records to his attorney, in connection with Mr. Green's claim arising out of personal injuries sustained in a slip and fall incident that occurred on January 2, 2016.

39.      On or about January 29, 2018, Defendant Healthport, acting for and as an agent on behalf of Methodist, responded to Mr. Green's request for electronic medical records and provided 95 pages of medical records to Mr. Green via U.S. Mail.  Thereafter, Healthport (now operating under the name Ciox), acting for and as an agent on behalf of Methodist, sent an invoice stating that Mr. Green would be required to pay $160.14 for the requested medical records.  This $160.14 invoice included a $1 charge for the certification of these records as allowed by Texas law.

40.      Mr. Green disputed the amount claimed and refused to pay the amount claimed, because it exceeded the charges allowed under the HITECH Act.

41.      Ciox, acting for and as an agent on behalf of Methodist, then referred the inflated debt associated with Mr. Green's request for his Methodist medical records to Chase Receivables for collection.  Beginning in February 2019, Chase Receivables, acting for and as an agent on behalf of Ciox and/or Methodist, began sending collection letters to Mr. Green by which it sought to collect $160.14 for his Methodist medical records.

42.      Methodist engaged in debt collection for the purposes of § 392.001(6) of the Texas Finance Code because, either directly or indirectly, Methodist engaged in collection of a debt from Mr. Green.  If Methodist had responded to Mr. Green's October 4, 2017 and January 10, 2018,

requests for his medical records itself with an invoice stating that Mr. Green would be required to

pay $160.14 for the requested medical records as Healthport and/or Chase Receivables did acting

on behalf of Methodist, then Methodist would have been an original creditor acting impermissibly

in collecting a debt unlawfully under the Texas Finance Code.  In addition, and/or alternatively,

Methodist either directly or indirectly solicited Healthport and/or Chase Receivables to collect the

claimed debts for Methodist by sending the inflated $160.14 invoice in violation of Section

392.001(5) of the Texas Finance Code in response to Mr. Green's request for electronic medical

records.  In addition, and/or alternatively, Methodist is vicariously liable for the conduct of

Healthport and/or Chase Receivables in attempting to collect the inflated charges for the records

Mr. Green requested.  With Healthport and/or Chase Receivables acting as its agent, Methodist is

vicariously liable for the conduct of Healthport and/or Chase Receivables.

## CAUSES OF ACTION

43.     Plaintiffs are consumers under the Texas Debt Collection Practices Act, as their

claims arise out of Defendants actions and misrepresentations regarding consumer debts.

44.     Defendants are debt collectors under the Texas Debt Collection Practices Act, as

they directly or indirectly engage in the action, conduct, or practice of collecting, or of soliciting

for collection, consumer debts that are alleged to be due from Plaintiffs.

45.     The above-described acts of Defendants constitute violations of Texas Finance

Code § 392.303(a)(2), as Defendants have collected or attempted to collect a charge, fee, or

expense that is not legally chargeable to Plaintiffs by charging Plaintiffs more for their medical

records than is allowed by the HITECH Act and its implementing regulations and/or alternatively

than is allowed by other potentially applicable Texas law including without limitation Texas Civil

Practice and Remedies Code § 22.004 and/or Texas Administrative Code, Title 22, Part 9, Chapter

165 and/or Texas Health and Safety Code § 241.154 (hereinafter, "applicable Texas law") and/or for charging Plaintiffs more for notarization or an affidavit to certify medical records than is permitted by applicable Texas law and/or for charging more than once for a single set of records requested by a Plaintiff in violation of the HITECH Act and applicable Texas law and/or for charging for notarization or an affidavit to certify medical records when such certification has not been requested or received by a Plaintiff and by repeatedly sending invoices for such inflated charges to Plaintiffs..

46.    The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(8), as Defendants have misrepresented the character, extent, or amount of a consumer debt by representing that they may charge Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations and/or applicable Texas law and/or for charging Plaintiffs more for notarization or an affidavit to certify medical records than is permitted by applicable Texas law and/or for charging more than once for a single set of records requested by a Plaintiff in violation of the HITECH Act and applicable Texas law and/or for charging for notarization or an affidavit to certify medical records when such certification has not been requested or received by a Plaintiff and by repeatedly sending invoices for such inflated charges to Plaintiffs.

47.    The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(12), as Defendants have represented that a consumer debt may be increased by the addition of service fees or other charges when a statute does not authorize the additional fees or charges by representing that they may charge Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations and/or applicable Texas law and/or for charging Plaintiffs more for notarization or an affidavit to certify medical records than is

permitted by applicable Texas law and/or for charging more than once for a single set of records requested by a Plaintiff in violation of the HITECH Act and applicable Texas law and/or for charging for notarization or an affidavit to certify medical records when such certification has not been requested or received by a Plaintiff and by repeatedly sending invoices for such inflated charges to Plaintiffs.

48.     The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(14), as Defendants have represented falsely the status or nature of the services rendered by them by charging for notarization or an affidavit to certify medical records when such certification has not been requested or received by a Plaintiff.

49.     The above-described acts of Defendants constitute violations of Texas Finance Code § 392.304(a)(19), as Defendants have used false representations and deceptive means to collect a debt by representing that they may charge Plaintiffs more for their medical records than is allowed by the HITECH Act and its implementing regulations and/or applicable Texas law and/or for charging Plaintiffs more for notarization or an affidavit to certify medical records than is permitted by applicable Texas law and/or for charging more than once for a single set of records requested by a Plaintiff in violation of the HITECH Act and applicable Texas law and/or for charging for notarization or an affidavit to certify medical records when such certification has not been requested or received by a Plaintiff and by repeatedly sending invoices for such inflated charges to Plaintiffs.

50.     The above-described acts of Defendants also violate the Texas Deceptive Trade Practices-Consumer Protection Act pursuant to Texas Finance Code § 392.404.

51.     The above-described acts of Defendants were the producing cause of and resulted in actual damages to Plaintiffs, calculated as the difference between the reasonable cost to provide

electronic copies of medical records in accordance with the HITECH Act and its implementing regulations and/or applicable Texas law and the inflated amounts charged by Defendants as set forth above, for which damages Plaintiffs sue pursuant to Texas Finance Code § 392.403(a)(1). For the charges for certification of records that exceed the maximum permitted by applicable Texas law and/or for the multiple charges for a single set of records requested, actual damages are calculated as the difference between the amount actually charged and the maximum amount permitted under the HITECH Act and its implementing regulations and/or applicable Texas law.

52.     As to Defendant North Shore, Plaintiff Amelia Rios further seeks statutory damages in the amount of $100 for each violation of Texas Finance Code § 392.202 that was committed by said Defendant due to its failure to acknowledge or act on Ms. Rios' written disputes of the alleged debts in question, pursuant to Texas Finance Code § 392.403(e).

53.     Plaintiffs seek injunctive relief to prevent or restrain the above-referenced violations of the Texas Finance Code, pursuant to Texas Finance Code § 392.403(a)(1).

54.     Plaintiffs seek reasonable and necessary attorney fees and costs for trial and appeal of this cause as provided by Texas Finance Code § 392.403(b).

55.     Defendants' actions were committed intentionally and knowingly, thereby making Defendants liable to Plaintiffs for additional damages pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act.

56.     Alternatively, Defendants would be unjustly enriched if they were entitled to obtain a benefit from Plaintiffs via their actions in overcharging Plaintiffs for medical records and the certification thereof as described above.  Plaintiffs seek an order of the Court cancelling any portion of the alleged debts at issue that exceed the reasonable cost for Defendants to provide electronic copies of medical records in accordance with the HITECH Act and its implementing

regulations and/or applicable Texas law and restitution of the difference between such allowable charges and the inflated amounts charged by Defendants and paid as set forth above.

57.     Defendants are responsible for the above-described acts and misrepresentations of their agents and employees pursuant to the doctrines of respondent superior and agency.

## CLASS ACTION ALLEGATIONS

58.     This action is brought by Plaintiffs on behalf of a class consisting of (i) all persons in Texas (ii) who requested medical records from any Defendant and/or had their request for medical records acted on by any Defendant (iii) and were charged or attempted to be charged a fee for such medical records that exceeds the costs allowed to be charged pursuant to 45 CFR 164.524(c)(4) and/or applicable Texas law.  In addition or alternatively, this action is brought on behalf of a class consisting of all persons in Texas who requested certified medical records from any Defendant and who were charged a fee for the certification that exceeds the amount permitted under applicable Texas law. In addition or alternatively, this action is brought on behalf of a class consisting of all persons in Texas who were charged more than once for a single set of records requested and/or were charged for notarization or an affidavit to certify medical records when such certification has not been requested or received.

59.     Additionally, this action is brought by Plaintiff Amelia Rios on behalf of a class consisting of (i) all persons (ii) who disputed the amounts sought to be charged by Defendant North Shore (iv) whose complaint was not acknowledged by such Defendant as required by Texas Finance Code § 392.202.

60.     The class is so numerous that joinder of all members is impractical.  Upon information and belief, and based on reported cases, Plaintiffs allege Defendants have unlawfully charged or attempted to charge thousands of persons a fee for medical records that exceeds the

costs allowed to be charged pursuant to CFR 164.524(c)(4).  Furthermore, upon information and belief, Plaintiff Amelia Rios alleges that Defendant North Shore Agency has failed to acknowledge written disputes concerning charges for medical records lodged by hundreds if not thousands of persons.

61.     There are questions of law and fact, common to the class, which predominate over any questions affecting only individual class members.  The principle question is whether Defendants' charges for medical records exceed the reasonable costs allowed to be charged pursuant to 45 CFR 164.524(c)(4) and/or other applicable law.

62.     A secondary common question is whether Defendant North Shore Agency violated Texas Finance Code § 392.202 by failing to acknowledge written disputes concerning their charges for medical records as required by Texas Finance Code § 392.202.

63.     A third common question is whether Defendant Healthport has impermissibly charged or attempted to charge inflated amounts for medical records by billing consumers multiple times for the same medical records as it did with respect to the records that Ms. Rios sought from Partners in Primary Care.

64.     Individual questions as to damages and the identity of class members can be determined by ministerial inspection of Defendants' records.

65.     The Plaintiffs will fairly and adequately protect the interest of the class and are committed to vigorously litigating this matter.  Plaintiffs have retained counsel experienced in handling class actions and consumer claims.  Neither the Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

66.     Plaintiff's claims are typical of the claims of the class, which all arise from the same operative facts and are based on the same legal theories.

67.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. At least one class has been previously certified in a similar case.  See, e.g.  *Ruzhinskaya v. Healthport Technologies, LLC*, No. 14 Civ. 2921 (PAE) (S.D. N.Y. 2015).

## **GROUNDS FOR RELIEF**

68.     Plaintiffs hereby re-allege and incorporate herein by this reference the allegations set forth in ¶ No. 1 through 66 of this Complaint.

69.     Plaintiffs and the class described in ¶ 48 above would show that Defendants have violated the Texas Finance Code and have been unjustly enriched by charging or attempting to charge fees for medical records which exceed the amounts allowed under the federal HITECH Act and its implementing regulations and/or other applicable law.

70.     Plaintiffs and the class described in ¶ 57 above are entitled to actual damages calculated as the difference between Defendants' actual cost to provide electronic copies of medical records in accordance with the HITECH Act and/or other applicable law and the inflated amounts charged by Defendants as set forth above, which damages are recoverable by Plaintiffs and the class pursuant to the above-cited provisions of Texas Finance Code, plus additional damages pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act as Defendants' conduct was committed intentionally and knowingly, plus reasonable and necessary attorney fees and costs for trial and appeal of this cause as provided by Texas Finance Code § 392.403(b).  Such actual damages are also recoverable under the doctrine of unjust enrichment.

71.     Plaintiff Amelia Rios and the class described in ¶ 58 above are entitled to statutory damages from Defendant North Shore in the amount of $100 per violation due to said Defendant's

failure to acknowledge disputes relating to amounts sought to be charged by Defendant North Shore as required by Texas Finance Code § 392.202, pursuant to Texas Finance Code § 392.403(e).

72.    Alternatively, Defendants have exhibited common behavior towards Plaintiffs and the class by seeking to charge fees for medical records which exceed the amounts allowed under the federal HITECH Act and its implementing regulations and/or other applicable law.  Plaintiffs and the class members must have been harmed in essentially the same way, in that they have all been charged excessive amounts for electronic copies of medical records.  The granting of injunctive relief would predominate over monetary damage claims, as injunctive relief would benefit Plaintiffs and the class for many years into the future rather than being limited to relatively small damage claims for the two years prior to the filing of this lawsuit.  The injunctive relief sought is authorized by Texas Finance Code § 392.403(a)(1) and may be narrowly tailored to ensure that only the specific costs permitted by the HITECH Act and its implementing regulations are charged to persons seeking copies of medical records from Defendants.

## JURY DEMAND

73.    Plaintiffs hereby request, for themselves and members of the class, a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final hearing and trial on the merits hereof, Plaintiffs have and recover judgment against the Defendants for the following:

a.    Certification of this action as a class action;

b.    Actual damages;

c.    Statutory damages;

d.    Additional damages;

e.    Additionally, and/or in the alternative, injunctive relief;

f.      Costs as provided for by statute or Court rule;

g.      Reasonable attorneys' fees incurred through trial and any appeal taken therefrom;

h.      Interest at the lawful rate until paid;

i.      Such other and further relief to which Plaintiffs may be justly entitled, including awarding Plaintiffs their actual, additional and/or statutory damages and attorneys' fees in the event the case is not certified to use the class action procedure.

Respectfully submitted,

RILEY & RILEY
ATTORNEYS AT LAW

By: _____
CHARLES RILEY
State Bar No. 24039138
DARBY RILEY
State Bar No. 16924400
320 Lexington Avenue
San Antonio, Texas 78215
Telephone:  (210) 225-7236
Facsimile:  (210) 227-7907
charlesriley@rileylawfirm.com

BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819 Telephone
(210) 224-0141 Facsimile

By: _____
     BENJAMIN R. BINGHAM
     State Bar No. 02322350
     ben@binghamandlea.com
     ROYAL B. LEA, III
     State Bar No. 12069680
     royal@binghamandlea.com

*COUNSEL FOR PLAINTIFFS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the **28th day of October, 2019**, a true and correct copy of the above and foregoing has been served via CM/ECF electronic transmission on the following:

Benjamin R. Bingham
Royal B. Lea, III
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
Co-Counsel for Plaintiffs

Charles A. Deacon
Alicia M. Grant
NORTON ROSE FULBRIGHT US, LLP
300 Convent Street, Suite 2100
San Antonio, TX 78205-3792
Counsel for Defendants, Nix Hospitals System, LLC and ScanSTAT, L.P.

Abrigail M. Lyle
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 78202

Laura T. Wagner
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, St 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308
Counsel for Defendants, CIOX Health, LLC and Partners in Primary Care, PA

Whitney L. White
SESSIONS, FISHMAN, NATHAN &ISRAEL
900 Jackson Street, Suite 440
Dallas, TX 75202
Counsel for Defendant, North Shore Agency, Inc.

Richard G. Foster
Raj Aujla
PORTER. ROGERS, DAHLMAN & GORDON, PC
Trinity Plaza II
745 E. Mulberry, Suite 450
San Antonio, Texas 78212
Counsel for Defendant, Partners in Primary Care, PA

J. Mark Craun
Neyma E. Figueroa
NAMAN, HOWELL, SMITH & LEE, PLLC
1001 Reunion Place, Suite 600
San Antonio, Texas 78216
Counsel for Defendant, Methodist Healthcare System of San Antonio, Ltd., LLP d/b/a Methodist Ambulatory Surgery Center

_____
CHARLES RILEY